Tarek H. Zohdy (SBN 247775)
Cody R. Padgett (SBN 275553)
**CAPSTONE LAW APC**
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:   (310) 556-4811
Facsimile:   (310) 943-0396
Tarek.Zohdy@capstonelawyers.com
Cody.Padgett@capstonelawyers.com

*Additional Counsel on Signature Page*
Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAOLA GUEVARA, LEE KRUKOWSKI, PAMELA WOODMAN, and KRIS HUCHTEMAN, individually and on behalf of all others similarly situated,<br><br>              Plaintiffs,<br><br>    v.<br><br>TOYOTA MOTOR CORPORATION; TOYOTA MOTOR SALES, U.S.A., INC.; TOYOTA MOTOR NORTH AMERICA, INC., AND DOES 1-50, inclusive<br><br>              Defendants, | **CLASS ACTION COMPLAINT**<br><br>1. **Violation of Magnuson-Moss Warranty Act (15 U.S.C. § 2301, *et seq.*)**<br>2. **Breach of Express Warranty**<br>3. **Breach of Implied Warranty**<br>4. **Violation of Florida Deceptive and Unfair Trade Practices Act, (Fla. Stat. § 501.201, *et seq.*)**<br>5. **Violation of Illinois Consumer Fraud and Deceptive Business Practices Act (815 Ill. Comp. Stat. 505/1, *et seq.*)**<br>6. **Violation of New Hampshire Consumer Protection Act (N.H. Rev. Stat. Ann. § 358-A:1, *et seq.*)**<br>7. **Violation of Missouri Merchandising Practices Act (Mo. Rev. Stata. §§ 407.010, *et seq.*)**<br>8. **Fraudulent Concealment**<br>9. **Unjust Enrichment (in the alternative)** |

Plaintiffs Paola Guevara, Lee Krukowski, Pamela Woodman, and Kris Huchteman ("Plaintiffs"), by and through counsel, bring this Class Action Complaint against Defendants Toyota Motor Corporation ("TMC"), Toyota Motor Sales, U.S.A., Inc. ("TMS"), Toyota Motor North America, Inc. ("TMNA"), and Does 1-50 (collectively, "Defendants" or "Toyota"), on behalf of themselves and all others similarly situated, and allege, upon personal knowledge as to their own actions and their counsel's investigations, and upon information and belief as to all other matters, as follows:

## I.     NATURE OF THE CASE

1.     Plaintiffs bring this case on behalf of themselves and on behalf of all similarly situated persons ("Class Members") in the United States, and in the alternative on behalf of all persons in the states of Florida, Illinois, New Hampshire, and Missouri who purchased or leased any model year 2013-2018 Toyota RAV4 vehicles ("Class Vehicles" or "Vehicles") equipped with a 12-Volt Battery and that were designed, manufactured, distributed, marketed, sold, and leased by Toyota or Toyota's parent, subsidiary, or affiliates thereof.

2.     This is a consumer class action concerning the misrepresentation of material facts and the failure to disclose material facts and safety concerns to consumers.

3.     Toyota manufactured, marketed, distributed, and sold the Class Vehicles without disclosing that the batteries equipped in the Class Vehicles are defective.

4.     A vehicle's battery provides power for starting the vehicle, acts as a surge protector for the car's computer, and provides power for short-term use of vehicle functions such as lights, infotainment systems, GPS, or wipers when the engine is turned off.

5.     Based on publicly available information, counsel's investigations, and Plaintiffs' own experiences, Plaintiffs allege that the Class Vehicles are defective in

design, manufacture, materials and/or workmanship in that the Vehicles' 12-Volt Battery (the "12V Battery") causes electrical shorts when the B+ terminal makes contact with the battery hold down frame, which may result in the sudden loss of electrical power, vehicle stalling, and/or a fire originating in the engine compartment (the "Battery Defect" or "Defect").

6.     The Battery equipped in the Class Vehicles was also designed and manufactured by Toyota.

7.     The Battery Defect is inherent in each Class Vehicle and was present at the time of sale or lease to each Class Member.

8.     The Battery Defect presents a safety risk for Plaintiffs, members of the Class, and the general public because the Class Vehicles can and do suddenly lose electrical power, stall, smoke, or catch fire due to the Battery Defect.

9.     This hazardous defect has resulted in numerous complaints to authorized dealerships throughout the country and to the to the National Highway Traffic Safety Administration ("NHTSA")

10.     Toyota's New Vehicle Limited Warranty ("NVLW") "covers repairs and adjustments needed to correct defects in materials and workmanship of any part supplied by Toyota."

11.     Despite the common design and/or manufacturing defect in the Batteries being a potentially life-threatening safety issue, Toyota has refused to recall or replace the defective Batteries. Indeed, discovery will show and based on interactions between Plaintiffs and Toyota authorized dealerships, Toyota refuses to replace or repair the Batteries.

12.     Prior to purchasing or leasing the Class Vehicles, Plaintiffs and other Class Members did not know that the Class Vehicles would suddenly lose electrical power, stall, smoke, or catch fire due to the Battery Defect.

13.     Based on pre-production testing and design failure mode analysis, early complaints to dealerships and warranty claims, replacement part orders, and

complaints made by consumers to Defendant TMS and to the NHTSA, Defendants were aware of the Battery Defect in Class Vehicles but continued to conceal the Defect and its effects from Plaintiffs and members of the Class.

14.    Discovery will show that Toyota knew or should have known that the Class Vehicles are defective and suffer from the Battery Defect and are not fit for their intended purpose of providing consumers with safe and reliable transportation. Knowledge and information regarding the Battery Defect and associated safety risks that the Class Vehicles would suddenly lose electrical power, stall, smoke, or catch fire, were in the exclusive and superior possession of Defendants and their authorized dealerships. Nevertheless, Toyota failed to disclose this defect at the time of purchase or lease and thereafter to Plaintiffs and Class Members, who could not reasonably discovery the Defect through due diligence.

15.    The Battery Defect is material to Plaintiffs and members of the Class because when they purchased or leased their Class Vehicles, they reasonably expected that the battery in their vehicles would operate as intended and not short and result in their vehicles suddenly losing electrical power, stalling, smoking, or catching fire.

16.    Had Toyota disclosed the Battery Defect at the time of sale or lease, as well as the associated costs related to the Battery Defect, Plaintiffs and the Class Members would not have purchased the Class Vehicles or would have paid less for them.

17.    As a result of their reliance on Toyota's omissions and/or misrepresentations, Plaintiffs and other owners and/or lessees of the Class Vehicles have suffered ascertainable loss of money, property, and/or loss in value of their Class Vehicles.

18.    The first priority of an automobile manufacturer should be to ensure that its vehicles are safe and operate as intended to prevent or minimize the threat of death or serious bodily harm. In addition, an automobile manufacturer must take all

reasonable steps to ensure that, once a vehicle is running, it operates safely, and its mechanical systems (such as the battery) work properly. Moreover, an automobile manufacturer that is aware of dangerous design and/or manufacturing defects that cause its vehicles to suddenly lose power, stall, smoke, or catch fire must promptly disclose and remedy such defects.

19.    This case arises from Toyota's breach of its obligations and duties, including Toyota's omissions and failure to disclose that, as a result of the Battery Defect, Class Vehicles may unexpectedly lose power, stall, smoke, or catch fire, creating an unreasonable risk of serious bodily harm and death.

20.    To the extent warranted by the developing facts, Plaintiffs will further supplement the list of Class Vehicles to include additional Toyota vehicles that have the Battery Defect.

21.    The Battery Defect makes the Class Vehicles unreasonably dangerous. Because of the Defect, the Class Vehicles are likely to suffer serious damages and potentially catch fire if accidents occur, and there is an unreasonable and extreme risk of serious bodily harm or death to the vehicle's occupants and others in the vicinity.

## II.    PARTIES

### A. Plaintiffs

**Plaintiff Paola Guevara**

22.    Plaintiff Paola Guevara is Florida citizen who lives in Orlando, located in Orange County, Florida.

23.    On or about March 19, 2021, Plaintiff Guevara purchased a certified pre-owned 2018 Toyota Rav4 equipped with the 12V Battery from Winter Park Toyota AutoNation, an authorized Toyota dealership located in Winter Park, Florida. This vehicle was designed, manufactured, sold, distributed, advertised, marketed, and/or warranted by Toyota.

24.     Plaintiff Guevara purchased her vehicle for approximately $20,508.00. Passenger safety and reliability were important factors in Plaintiff Guevara's decision to purchase his vehicle.

25.     Before purchasing her 2018 Toyota RAV4, Plaintiff Guevara researched the vehicle.  Plaintiff Guevara believed that the Toyota RAV4 would be a safe and reliable vehicle.

26.     At the time of Plaintiff Guevara's purchase, Toyota knew that its RAV4 12V batteries were defective, but the Toyota sales representative did not disclose the Defect to Plaintiff Guevara when discussing the features, components, and performance of the Vehicle prior to purchase. In reliance on these material omissions and misrepresentations, Plaintiff Guevara purchased – then operated the Vehicle on the reasonable but incorrect belief that the Vehicle's battery would operate properly as warranted. Had Plaintiff Guevara been informed of the Battery Defect prior to or at the time of purchase, he would not have purchased the Vehicle or else would have paid significantly less for the Vehicle.

27.     On or above May 5, 2021, Plaintiff Guevara was driving her vehicle when the vehicle experienced a sudden loss of power.  Plaintiff Guevara coasted the vehicle to the side of the road and exited the vehicle.  Upon exiting, Plaintiff Guevara noticed smoke, sparks, and flames coming from her vehicle.  She immediately called 911 and the City of Orland Fire Department responded to her call and extinguished her vehicle.  As a result of the fire, Plaintiff Guevara's vehicle is complete inoperable. Plaintiff Guevara has spent approximately $2,000.00 as a result of Battery Defect.

28.     Neither Toyota nor any of its agents, dealers, or representatives informed Plaintiff Guevara of the Battery Defect prior to her purchase of the Vehicle.

29.     Had Plaintiff Guevara been advised of the Battery Defect at or before the point of sale, she would not have purchased her Vehicle or else would have paid

significantly less for the Vehicle. Plaintiff Guevara did not receive the benefit of her bargain.

30.     Plaintiff Guevara might purchase or lease a Class Vehicle in the future, despite the fact it was once marred by false advertising or labeling, as Plaintiff Guevara may reasonably, but incorrectly, assume the Class Vehicles' Battery Defect was remedied or improved. At all times, Plaintiff Guevara, like all Class Members, has attempted to drive her Toyota RAV4 in a manner that is and was both foreseeable, and in which it was intended to be used.

**Plaintiff Lee Krukowski**

31.     Plaintiff Lee Krukowski is an Illinois citizen who lives in Yorkville, located in Kendall County, Illinois.

32.     On or about April 18, 2019, Plaintiff Krukowski purchased a certified pre-owned 2018 Toyota RAV4 equipped with the 12V Battery from Grossinger City Toyota, an authorized Toyota dealership located in Chicago, Illinois. This vehicle was designed, manufactured, sold, distributed, advertised, marketed, and/or warranted by Toyota.

33.     Plaintiff   Krukowski  purchased  his  vehicle  for  approximately $21,415.00.

34.     Passenger safety and reliability were important factors in Plaintiff Krukowski's decision to purchase his vehicle. Before purchasing his 2018 Toyota RAV4, Plaintiff Krukowski researched the vehicle.  Plaintiff Krukowski believed that the Toyota RAV4 would be a safe and reliable vehicle.

35.     At the time of Plaintiff Krukowski's purchase, Toyota knew that its RAV4 12V batteries were defective, but the Toyota sales representative did not disclose the Defect to Plaintiff Krukowski when discussing the features, components, and performance of the Vehicle prior to purchase. In reliance on these material omissions and misrepresentations, Plaintiff Krukowski purchased – then operated the Vehicle on the reasonable but incorrect belief that the Vehicle's battery

would operate properly as warranted. Had Plaintiff Krukowski been informed of the Battery Defect prior to or at the time of purchase, he would not have purchased the Vehicle or else would have paid significantly less for the Vehicle.

36.　In February 2021, Plaintiff Krukowski began to notice a burning smell in his garage after returning from a trip in his Vehicle.

37.　Neither Toyota nor any of its agents, dealers, or representatives informed Plaintiff Krukowski of the Battery Defect prior to his purchase of the Vehicle.

38.　Had Plaintiff Krukowski been advised of the Battery Defect at or before the point of sale, he would not have purchased his Vehicle or else would have paid significantly less for the Vehicle. Plaintiff Krukowski did not receive the benefit of his bargain.

39.　Plaintiff Krukowski might purchase or lease a Class Vehicle in the future, despite the fact it was once marred by false advertising or labeling, as Plaintiff Krukowski may reasonably, but incorrectly, assume the Class Vehicles' Battery Defect was remedied or improved. At all times, Plaintiff Krukowski, like all Class Members, has attempted to drive his Toyota RAV4 in a manner that is and was both foreseeable, and in which it was intended to be used.

**Plaintiff Pamela Woodman**

40.　Plaintiff Pamela Woodman is a New Hampshire citizen who lives in Dover, located in Strafford County, New Hampshire.

41.　On or about January 2018, Plaintiff Woodman purchased a new 2018 Toyota RAV4 equipped with the 12V Battery from Bill Dube, Inc., an authorized Toyota dealership located in Dover, New Hampshire.  This vehicle was designed, manufactured, sold, distributed, advertised, marketed, and/or warranted by Toyota.

42.　Plaintiff Woodman purchased her vehicle for approximately $27,300.00.

43.     Passenger safety and reliability were important factors in Plaintiff Woodman's decision to purchase her vehicle. Before purchasing her 2018 Toyota RAV4, Plaintiff Woodman researched the vehicle.  Plaintiff Woodman believed that the Toyota RAV4 would be a safe and reliable vehicle.

44.     At the time of Plaintiff Woodman's purchase, Toyota knew that its RAV4 12V batteries were defective, but the Toyota sales representative did not disclose the Defect to Plaintiff Woodman when discussing the features, components, and performance of the Vehicle prior to purchase. In reliance on these material omissions and misrepresentations, Plaintiff Woodman purchased – then operated the Vehicle on the reasonable but incorrect belief that the Vehicle's battery would operate properly as warranted. Had Plaintiff Woodman been informed of the Battery Defect prior to or at the time of purchase, she would not have purchased the Vehicle or else would have paid significantly less for the Vehicle.

45.     On or about May 12, 2020, Plaintiff Woodman was driving the vehicle when she began to smell a burning rubber odor.  As she pulled over the side of the road, Plaintiff Woodman saw flames coming from the center console.  She stopped the vehicle and exited quickly, before the vehicle burned to its frame, including all possessions inside the vehicle.  As a result of the fire, Plaintiff Woodman's vehicle is completely inoperable.  Plaintiff Woodman has spent approximately $10,000.00 as a result of Battery Defect.

46.     Neither Toyota nor any of its agents, dealers, or representatives informed Plaintiff Woodman of the Battery Defect prior to her purchase of the Vehicle.

47.     Had Plaintiff Woodman been advised of the Battery Defect at or before the point of sale, she would not have purchased her Vehicle or else would have paid significantly less for the Vehicle. Plaintiff Woodman did not receive the benefit of her bargain.

48.     Plaintiff Woodman might purchase or lease a Class Vehicle in the future, despite the fact it was once marred by false advertising or labeling, as Plaintiff Woodman may reasonably, but incorrectly, assume the Class Vehicles' Battery Defect was remedied or improved. At all times, Plaintiff Woodman, like all Class Members, has attempted to drive her Toyota RAV4 in a manner that is and was both foreseeable, and in which it was intended to be used.

**Plaintiff Kris Huchteman**

49.     Plaintiff Kris Huchteman is a Missouri citizen who lives in Bolivar, located in Polk County, Missouri.

50.     On or about June 17, 2017, Plaintiff Huchteman purchased a new 2017 Toyota RAV4 equipped with the 12V Battery from Joe Machens Toyota, an authorized Toyota dealership located in Columbia, Missouri.  This vehicle was designed, manufactured, sold, distributed, advertised, marketed, and/or warranted by Toyota.

51.     Plaintiff Huchteman purchased her vehicle for approximately $32,809.00.

52.     Passenger safety and reliability were important factors in Plaintiff Huchteman's decision to purchase her vehicle. Before purchasing her 2017 Toyota RAV4, Plaintiff Huchteman researched the vehicle.  Plaintiff Huchteman believed that the Toyota RAV4 would be a safe and reliable vehicle.

53.     At the time of Plaintiff Huchteman's purchase, Toyota knew that its RAV4 12V batteries were defective, but the Toyota sales representative did not disclose the Defect to Plaintiff Huchteman when discussing the features, components, and performance of the Vehicle prior to purchase. In reliance on these material omissions and misrepresentations, Plaintiff Huchteman purchased – then operated the Vehicle on the reasonable but incorrect belief that the Vehicle's battery would operate properly as warranted. Had Plaintiff Huchteman been informed of the

Battery Defect prior to or at the time of purchase, she would not have purchased the Vehicle or else would have paid significantly less for the Vehicle.

54.     On or about July 16, 2020, Plaintiff Huchteman's spouse, Sarah Huchteman, was driving the vehicle when she began to notice smoke coming from the vehicle.  Mrs. Huchteman immediately pulled the vehicle over to the side of the road and exited the vehicle before it began to catch fire. Although the fire department was able to extinguish the vehicle, it was deemed a complete loss. Plaintiff Huchteman has spent approximately $6,000.00 as a result of Battery Defect.

55.     Neither Toyota nor any of its agents, dealers, or representatives informed Plaintiff Huchteman of the Battery Defect prior to his purchase of the Vehicle.

56.     Had Plaintiff Huchteman been advised of the Battery Defect at or before the point of sale, he would not have purchased his Vehicle or else would have paid significantly less for the Vehicle. Plaintiff Huchteman did not receive the benefit of his bargain.

57.     Plaintiff Huchteman might purchase or lease a Class Vehicle in the future, despite the fact it was once marred by false advertising or labeling, as Plaintiff Huchteman may reasonably, but incorrectly, assume the Class Vehicles' Battery Defect was remedied or improved. At all times, Plaintiff Huchteman, like all Class Members, has attempted to drive her Toyota RAV4 in a manner that is and was both foreseeable, and in which it was intended to be used.

**B. Defendants**

58.     Defendants are all corporations doing business in the United States, and they design, manufacture, distribute, market, sell, lease, warranty, service and/or repair passenger vehicles, including Class Vehicles.

59.     Founded in 1937 and headquartered in Toyota City, Japan, Defendant Toyota Motor Corporation ("TMC") is a corporation organized under the laws of Japan. TMC is the corporate parent of TMNA, and through its various subsidiaries

and affiliates, designs, manufactures, markets, distributes and warrants Toyota automobiles throughout the fifty states.   TMC manufactures and distributes automobiles, as well as parts for Toyota branded vehicles, and is the parent company of both TMS and TMNA.   Discovery will show that TMC is responsible for the design of the Class Vehicles, and also manufactures the Class Vehicles and the 12V Battery, in Japan and in the United States through TMNA.

58.   Defendant Toyota Motor North America, Inc. ("TMNA"), is a corporation organized and in existence under the laws of the State of California and registered to do business in the State of California. TMNA is headquartered at 6565 Headquarters Dr, Plano, TX 75024. According to Toyota's official website, TMNA "brings together Toyota's marketing, sales, engineering and manufacturing arms in North America on one shared, state-of-the-art campus."[1] TMNA is the holding company for all its parent company's (TMC) North American operations, including sales, engineering, and manufacturing subsidiaries. TMNA is the corporate parent of Toyota Motor Sales, U.S.A., Inc. ("TMS"). TMNA oversees government and regulatory affairs, energy, economic research, philanthropy, corporate advertising and corporate communications for all of TMC's North American operations.

59.   Defendant Toyota Motor Sales, U.S.A., Inc. ("TMS") is a corporation organized and in existence under the laws of the State of California and registered to do business in the State of California. TMS is headquartered at 6565 Headquarters Dr, Plano, TX 75024. TMS is the sales, distribution, and marketing division for TMC and TMNA, and oversees sales and other operations across the United States. TMS markets motor vehicles, parts, and other products for sale in California, in the United States, and throughout the world. TMS is the warrantor and distributor of Class Vehicles in California and throughout the United States.  Discovery will show that TMS maintains the North American Parts Center in Ontario, California, which

---

[1] https://www.toyota.com/usa/operations/map.html#!/tcal (last visited Jan. 30, 2020)

is responsible for shipping "goods to over 16 distribution centers across the US," and maintains the Los Angeles Parts Distribution Center in Torrance, California, which "provide[s] daily service to over 240 Toyota and Lexus Dealers across California and the western U.S."[2]

60.   In order to sell vehicles to the general public, TMS enters into agreements with dealerships who are then authorized to sell Toyota-branded vehicles to consumers such as Plaintiffs.  In return for the exclusive right to sell new Toyota vehicles in a geographic area, authorized dealerships are also permitted to service and repair these vehicles under the warranties TMS provides directly to consumers.  These contracts give TMS a significant amount of control over the actions of the dealerships, including sale and marketing of vehicles and parts for those vehicles.  All service and repairs at an authorized dealership are also completed according to TMS's explicit instructions, issued through service manuals, technical service bulletins ("TSBs"), and other documents, that were created with input from TMNA.  Per the agreements between TMS and the authorized dealers, consumers such as Plaintiffs can receive services under TMS's issued warranties at dealer locations that are convenient to them. TMS has a nationwide dealership network and operates offices and facilities throughout the United States. TMS distributes Toyota parts and vehicles, which are then sold through Defendants' network of dealerships. Money received from the purchase of a Toyota vehicle from a dealership flows from the dealer to TMS.

61.   At all relevant times, there exists a unity of ownership between TMC, TMNA, and TMS and their agents such that any individuality or separateness between them has ceased and each of them is the alter ego of the others. Adherence to the fiction of the separate existence of Defendants, would, under the circumstances set forth in this complaint, sanction fraud or promote injustice.

---

[2] https://www.toyota.com/usa/operations/map.html#!/USCA (last visited Jan. 30, 2020)

62.     Upon information and belief, TMC communicates with TMNA and TMS concerning virtually all aspects of Toyota products distributed within the United States, including appropriate repairs for pervasive defects and whether Toyota will cover those repairs under its New Vehicle Limited Warranty. Toyota's decision to not disclose the Battery Defect to Plaintiffs or the Class was a decision made jointly by TMC, TMNA, and TMS.

63.     TMS also oversees Toyota's warranty operations, including reviewing and analyzing warranty data submitted by Toyota dealerships in order to identify defect trends in vehicles. Upon information and belief, Toyota requires that when a repair is made under warranty, service centers must provide Defendants with detailed documentation of the problem and repair. NOW collects this information, makes it available to other Toyota divisions, and assists Toyota in determining whether particular repairs are covered by Toyota's warranty or are indicative of a pervasive defect.

64.     Toyota also jointly designs, determines the substance of, and affixes to its vehicles the window stickers visible on each new Toyota vehicle that is offered for sale at its authorized dealerships, including those omitting mention of the Defect. These stickers were reviewed by Plaintiffs and the Class prior to purchasing Class Vehicles. Toyota controls the content of these window stickers; its authorized dealerships have no input with respect to their content. Vehicle manufacturers like Toyota are legally required to affix a window sticker to every vehicle offered for sale in the United States pursuant to the Automobile Information Disclosure Act of 1958, 15 U.S.C. §§ 1231-1233, *et seq*. The Act specifically prohibits the removal or alteration of the sticker by anyone other than the ultimate purchaser prior to the sale of the car, including the dealership at which the vehicle is offered for sale.

65.     Toyota developed and disseminated the marketing materials to which Plaintiffs and the Class were exposed, including owner's manuals, informational brochures, warranty booklets, and information included in maintenance

recommendations and/or schedules for the Class Vehicles, and other promotional materials relating to the Class Vehicles, all of which fail to disclose the Defect.

66.   Toyota also employs a Customer Experience Center, where representatives are responsible for receiving customer complaints and monitoring customer complaints posted to Toyota or third-party websites. This data is received by NOW, through which Toyota acquires knowledge of defect trends in its vehicles.

67.   Defendants, through their various entities, design, manufacture, market, distribute, service, repair, sell, and lease passenger vehicles, including the Class Vehicles, nationwide and in California.

68.   At all relevant times, Defendants were and are engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and motor vehicle components in Riverside County and throughout the United States of America.

### III.   JURISDICTION AND VENUE

69.   The Court has subject matter jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). There are at least 100 members in the proposed class, the aggregated claims of the individual Class Members exceed the sum or value of $5,000,000.00 exclusive of interest and costs, and Plaintiffs and Class Members are citizens of states different from Defendant.

70.   The Court has personal jurisdiction over Toyota because, through its business of distributing, selling, and leasing the Class Vehicles in this District, Toyota has established sufficient contacts in this District such that personal jurisdiction is appropriate.

71.   Venue is proper in this District under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.  Specifically, TMNA and TMS are incorporated in this District.

### IV.   FACTUAL ALLEGATIONS

**A. The Nature Of The Battery Defect**

72.    A typical 12V car battery is contained in a plastic case that holds all of the internal components in place. The top of the battery is a plastic lid that has a positive and negative terminal made of lead. These are called terminal posts.

73.    The battery casing is divided into six separate chambers separated by a plastic wall. Each chamber is known as a cell. A 12V battery consists of six individual cells that generate around 2 volts. Each cell is connected to the positive of the next cell via two lead plate straps to give a total voltage of around 12V.

74.    The battery uses a lead-acid chemical reaction. Each cell consists of two plates, one made from lead and the other from lead dioxide. The plates are submerged in sulfuric acid, which acts as a catalyst and triggers a chemical reaction between them. This reaction produces electrons, which generate electricity. The electricity is then released through the positive terminal and returned to the negative terminal.

75.    When the driver switches the vehicle ignition on, it sends a signal to the battery to begin the chemical reaction. The electricity produced by this reaction supplies power to the starter motor, which then turns the engine over. At the same time, the battery provides power to the spark plugs, which ignite the air and fuel mixture that is compressed in the engine combustion cylinders.

76.    The power provided by the battery is then replaced by the alternator, which supplies most of the electrical current to the electrical systems in the vehicle, as well as keeps the battery charged.

77.    In order to keep a battery secured firmly in place in the battery tray, manufacturers such as Toyota use hold down straps or frames to prolong the life of the battery.  This both minimizes excessive vibration of the battery while the vehicle is in use and prevents the battery from coming into contact with other components of the engine which could cause it to short.

78.    In this case, the Class Vehicles contain one or more design and/or manufacturing defects that cause electrical shorts when the battery's B+ terminals

comes into contact with the battery hold down frame itself, making the Class Vehicles unsafe to drive.

79.    When the battery short circuits, there may be a sudden loss of electrical power, vehicle stalling, and/or a fire originating in the engine compartment

80.    Short circuits occur when there is a fault in the wiring harness, which shunts electricity between circuits before it gets to its destination. When the hold down frame comes into contact with the B+ terminal, it causes a short circuit in that the electrical current is directed away from its intended destination.

81.    Short circuits are extremely dangerous and can damage electronic components, set the check engine light, blow fuses, drain the battery, and leave drivers stranded. Short circuits can also cause excessive heat to wiring components and can result in smoke and fire. It is common for the object which caused the external short circuit to melt or fuse to the battery due to the heat produced.

82.    Class Member complaints to NHTSA, cited *infra*, as well as the hundreds of complaints Toyota has received directly from consumers, and the complaints Toyota has received via its authorized dealerships, demonstrate the unsafe and widespread nature of the Battery Defect and Defendants' awareness that the Defect existed before selling the Class Vehicles to Plaintiffs.

83.    On or about February 25, 2021, NHTSA opened an investigation into the Class Vehicles and a "thermal event originating in the left side of the engine compartment" of the Class Vehicles.[3]

84.    NHTSA's investigation summary reports:

A majority of thermal events occurred during driving conditions, with four taking place with the ignition off. Drivers experienced stalling prior to the thermal event in half of the instances where the vehicle was in motion. The twelve-volt battery was identified as the area of origin

---

[3] https://static.nhtsa.gov/odi/inv/2021/INOA-PE21005-5918.PDF

in a majority of the incidents reviewed.[4]

85.     NHTSA opened the investigation after receiving eleven complaints from consumers and additional Early Warning Report ("EWR") data from Toyota. The investigation remains open for NHTSA to "better understand the contributing factors and frequency of vehicle fires originating from the battery region" of the Class Vehicles.[5]

**B. Toyota Had Superior and Exclusive Knowledge of the Battery Defect**

86.     Toyota had superior and exclusive knowledge of the Battery Defect and knew or should have known that the Defect was not known or reasonably discoverable by Plaintiffs and Class Members before they purchased or leased the Class Vehicles.

87.     Plaintiffs are informed and believe and based thereon allege that before Plaintiffs purchased or leased their respective Class Vehicles, and Toyota knew about the Battery Defect through sources not available to consumers, including pre-release testing data, such as design mode failure analysis, early consumer complaints to Toyota and its dealers, testing conducted in response to those complaints, high failure rates and replacement part sales data, and other aggregate data from Toyota dealers about the problem. Publicly available facts set forth infra further confirm Toyota's knowledge.

88.     Toyota is experienced in the design and manufacture of consumer vehicles. As an experienced manufacturer, Toyota conducts tests, including pre-sale durability testing, on vehicle components such as the batteries in Class Vehicles, to verify the parts are free from defect and align with Toyota's specifications.  Further, pre-production testing on vehicles and their components is designed to be harsher than expected "real-world" driving experience of consumers. Such testing necessarily includes testing the vehicle battery as well as any other testing which

[4] *Id.*
[5] *Id.*

certainly engages the vehicle battery. Thus, Toyota knew or should have known that the batteries in Class Vehicles were defective and may cause the Class Vehicles to suddenly lose electrical power, stall, smoke, or catch fire.

89.   Moreover, Toyota is experienced in the design and manufacture of consumer vehicles. As an experienced manufacturer, Toyota conducts tests, including pre-sale durability, reliability, and safety testing, to verify the Class Vehicles and their components are free from defects and align with Toyota's specifications.   Toyota also uses pre-production testing to evaluate assembly methods and manufacturing workflows, in addition to evaluating the final product – the car.  Thus, Toyota knew or should have known of the Battery Defect and its inherent risk to the vehicle's safety.

90.   Toyota's pre-production vehicle testing is particularly robust, as demonstrated by a timeline of vehicle testing and evaluation published on TMC's website, www.toyota-global.com, which discovery will show is conducted in concert with TNMA.  Testing includes test driving the vehicle on the four test tracks at the Tahara Plant, TMC's main manufacturing facility in Japan, at the Shibetsu Proving Ground in Hokkaido, Japan, or at the Toyota Arizona Proving Ground in Wittman, Arizona.   The Proving Ground facilities enable Toyota to conduct continuous driving tests at 250 kilometer/hour in both extreme temperatures. Testing at these facilities would necessarily include circumstances that may result in the battery to short, and as such, Toyota would have become aware of the Battery Defect.

91.   Additionally, Toyota should have learned and did learn of this widespread Defect from the sheer number of reports received from dealerships and from customer complaints directly to Toyota. Toyota's customer relations department collects and analyzes field data including, but not limited to, repair requests made at dealerships, technical reports prepared by engineers who have

reviewed vehicles for which warranty coverage is being requested, parts sales reports, and warranty claims data.

92. Since the Class Vehicles were sold, drivers have repeatedly complained about sudden loss of electrical power, vehicle stalling, and/or fire in the engine compartment. For the Class Vehicles at issue, there was an unusually large number of these complaints such that Toyota was put on notice of a specific problem.

93. Namely, as the consumer complaints below indicate, Toyota was aware, or should have been aware, that the Battery Defect was present in the Class Vehicles dating back to at least 2016 when Toyota began receiving customer complaints through NHTSA.

94. Thus, by 2016, Toyota knew or should have known through sufficient product testing, consumer complaints, or other methods, that the Class Vehicles contained the Battery Defect.

95. In addition to consumer complaints, there were several high-profile incidents where Toyota RAV4s caught fire and exploded.

96. For example, in June 2018, a Minneapolis couple's brand new 2018 model year RAV4 spontaneously caught fire in the middle of the night while the car was turned off. The fire department arrived and while they were laying down a hose line, the vehicle violently exploded. After investigating the fire, Toyota suggested that it that an improperly routed tow hitch wiring could have started the fire and refused to compensate the couple.[6]

97. In March 2019, a San Diego family's 2017 RAV4 began to suddenly smoke under the steering column. Seconds after the family safely evacuated, the interior of the car was on fire. The fire department did not determine the cause of

---

[6] https://www.consumeraffairs.com/news/it-was-their-brand-new-toyota-it-exploded-in-their-driveway-and-no-one-can-explain-why-112718.html (last visited May 20, 2021).

the fire. When the owner tried to contact Toyota regarding the fire, the owner reported that Toyota's customer service was difficult to contact.[7]

98.   These events and the customer complaints referenced below, demonstrate that Toyota had knowledge of the Battery Defect yet continued to fail to warn drivers or provide an adequate remedy.

99.   Hundreds, if not thousands, of purchasers and lessees of the Class Vehicles have experienced the Battery Defect. Complaints filed by consumers with the NHTSA and posted on the Internet demonstrate that the Battery Defect is widespread. Not only have consumers complained about sudden loss of Vehicle power and stalling, but this Defect has often led to potentially life-threatening situations. In addition, these complaints evidence Toyota's awareness of the Battery Defect and its potential danger (note that spelling and grammar mistakes remain as found in the original).

100.   Toyota monitors customers' complaints made to NHTSA. Federal law requires automakers like Toyota to be in close contact with NHTSA regarding potential automobile defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports, customer complaints, and warranty data. See TREAD Act, Pub. L. No. 106-414, 114 Stat.1800 (2000).

101.   Automakers have a legal obligation to identify and report emerging safety-related defects to NHTSA under the Early Warning Report requirements. *Id*. Similarly, automakers monitor NHTSA databases for consumer complaints regarding their automobiles as part of their ongoing obligation to identify potential defects in their vehicles, including safety-related defects. Id. Thus, Toyota knew of the many complaints about the Battery Defect logged by the NHTSA Office of

---

[7] https://www.consumeraffairs.com/news/another-new-toyota-rav4-has-exploded-this-time-while-its-owner-was-taking-his-children-to-school-032219.html (last visited May 20, 2021).

Defect Investigation (ODI), and the content, consistency, and large number of those complaints alerted, or would have alerted, Toyota to the Battery Defect.

102.   Complaints filed by consumers with the NHTSA and other websites, which Toyota actively monitored during the relevant period, continue to accrue and demonstrate that the Battery Defect is a widespread, dangerous, and unresolved problem. The following are examples of many complaints from owners and lessees of the Class Vehicles concerning the Battery available through NHTSA's website, www.safercar.gov. Spelling and grammar mistakes appear as in original.

103.   For example, complaints to NHTSA involving the Battery Defect include:

a) **2018 Toyota RAV4**

i.   NHTSA Complaint from March 14, 2021 (Lenox, MA): This car started a fire on the road while it was in motion, and after i drove it over a mile on a city street on April 22nd, 2019. I stopped the car and turned off the car after i saw smoke came out of the hood in front of driver side windshield. I left the car immediately to call for help. Less than a minute, after I left the car, the fire started, the flames went up to 10 feet high in a short 2 minutes, in less than 10 minutes, before the firemen put fire off, the car was burned to the frame with nothing left inside. The car was driven a little over 6000 miles at the time. Toyota has not covered any of my loss and taken the responsibility. (ID # 11402838)

ii.   NHTSA Complaint from March 11, 2021 (Alexandria, VA): While driving, there is a little shakes on the car and a message appeared that the anti locking brake failed. I stop the vehicle and I saw smoke coming from the hood. I turned off the vehicle and took the key from the ignition. A fire start coming out of the hood and I told my wife to get out of the vehicle and I get out also, the driver of a vehicle behind us called the fire department and in a few minutes the fire fighters arrived and start extinguishing the fire. The fire engulf the whole vehicle. (ID # 11400275)

iii.   NHTSA Complaint from March 5, 2021 (Gulf Shores, AL): TL* the contact owns a 2018 Toyota RAV4. The contact stated while driving at 55 mph, when the vehicle stalled. the contact stated no warning light was illuminated. The

contact stated she saw smoke exit the hood. The contact was able to park on the side of the road. The vehicle was not drivable. The vehicle was towed to her residence. The contact called local dealer eastern shore Toyota (29732 Frederick Blvd, Daphne, AL 36526: (251) 250-0161) and were made aware of the failure. The vehicle had not been diagnosed or repaired. the manufacturer had been informed of the failure. The failure mileage was approximately 30,000. (ID # 11399349)

iv.   NHTSA Complaint from March 4, 2021 (Virginia Beach, VA): Constant battery failure on 2018 Rav 4. Replaced Jan 2020 and again March 2021. All the lights lit up, bells & whistles then dead. Have called triple a so many times we are out of service unless upgrade plan. Dealer states car not driven enough (despite driven several times per week) but dealer would not state how much car should be driven to avoid battery failure issue. Also noted squirrel had built nest under the hood with insulation. Notified dealer of all & they replaced battery which was not included in warranty that is active. Vehicle was stationary. Concerned as others having same issue and some with battery explosion/fire. My mom is elderly and concerned about her being stranded out and about or worse fire hazard. (ID # 11399097)

v.   NHTSA Complaint from May 9, 2019 (Joplin, MO): TL* The contact owned a 2018 Toyota RAV4. The contact stated after parking and returning to the vehicle in their garage, smoke was seen coming from the vehicle. The contact quickly entered the vehicle and reversed the vehicle out of the garage. The fire department was called and extinguished the fire. a police report was filed. No injuries were sustained. the vehicle was destroyed by the fire. the contact called Frank Fletcher Toyota (2209 S Rangeline Rd, Joplin, MO 64804 (417) 622-5447) and was informed that since the vehicle was moved they could offer no assistance. The manufacturer was not made aware of the failure. The failure mileage was 48,000. The vin was not available. (ID # 11206563)

vi.   NHTSA Complaint from April 2, 2019 (San Diego, CA): My 2018 Toyota RAV4 has stalled 5 times while driving on city streets in moving traffic, first time in Feb 2019 while driving home from work, in April three times while driving to work and one time while driving home from work(rush hour). all documented with Toyota. Occurs when I take my foot off the gas while driving, and difficulty restarting after it stalls with loss of power and sputtering. 'charging system malfunction' warning msg appeared on dashboard(I took photo and emailed to Toyota). I followed instructions in 2018 Toyotal RAV4 owner's manual "stop the car immediately...continuing to drive the vehicle may be dangerous". Had car towed to Toyota immediately. 3

trouble codes were recorded P1603(engine stall), P1604 startability malfunction, and P1605(rough idling), however they were unable to determine root cause of stalling and refused to keep my car to do further analysis despite the fact that I told them I did not feel safe driving vehicle, and my car is still under comprehensive warranty coverage. I contacted corporate, and they restated dealer conclusions and would not allow me to speak to a field tech specialist. I then emailed and wrote a letter to VP sales of Toyota, Andrew Gilleland. Rep from executive office called me. I asked for Toyota to provide me with either transportation assistance and a no cost-to-me extended comprehensive warranty until the underlying cause is determined and without further stalling incidences, or a replacement vehicle. He refused, despite all the significant potentially dangerous safety issues in a vehicle with less than 9,200 miles. Toyota does not appear to be concerned with reliability, peace of mind, and most of all safety. I have a case # with Toyota. I recently discovered there are several other reports on this site with same stalling issues as my car. (ID # 11205343)

vii.   NHTSA Complaint from February 29, 2019 (Parsippany, NJ): I was driving to work around 740AM on 287 South just past RT 24. Dashboard has "4WD" warning and smoke coming out from hood. I quickly moved to the shoulder and fire broke out before car came to full stop, all within one minute. I barely escape the car and called police and fire dept. They came and put off the fire. There are two explosions before the fire was put off. (ID # 11183106)

viii.  NHTSA Complaint from February 10, 2019 (Pine Mountain, GA): While driving the car just shut down and the code read charging system malfunction, we had it towed to the dealership and they erased the codes but they acknowledged they existed however they said there is nothing wrong and want us to continue driving this vehicle with no assurance it will not happen again. (ID # 11176121)

ix.   NHTSA Complaint from January 2, 2019 (Alpharetta, GA): After purchasing our brand-new 2018 RAV4 from authorized Toyota dealer, we were heading back home. On our way, we noticed burning smell followed by black smoke filled front side of the cabin. I quickly moved my car to the right side parking lot. while changing the lane I could not even see the right mirror because of the black smoke in the cabin. as soon as I parked the car and we got off the car, within a few seconds flames from the hoods were noticed I called emergency service (911) and to our disbelief to watch our new car burning in front of us. It was only 15 mins drive from dealer when we the incident happened. It took

only 10 mins to see my car was destroyed by flames. I could not get anything out from front or back seats (ID # 11164698)

x.   NHTSA Complaint from October 1, 2018: While driving on Saturday morning 9/29/18, I stopped at a stop light and my 2018 Toyota RAV4 lost all engine power while in traffic. The computer video screen showed the message "charging system failure\malfunction". I then attempted to restart the vehicle and it did not crank over, I waited a few seconds, made another attempt, the vehicle started. I pulled over and parked the vehicle, looked up the error message in the car manual and it instructed me that it was a serious problem and to take the vehicle immediately to the nearest Toyota dealer. I then took the vehicle to my local dealer, they ran a vehicle diagnostic report, they found no error messages or voltage problems with the vehicle. They offered no reason for the loss of vehicle power. The service manager stated that they could only diagnose the vehicle so far and that they would need "corporate" to send someone out to do further diagnostics on the black box. On 10/1/18, I opened a problem report with Toyota USA and was given a case#. (ID # 1132810)

xi.   NHTSA Complaint from August 22, 2018: My RAV4 caught fire in the middle of the night while parked on the street in front of my house. it had been parked for 12+ hours. After burning for about 10 minutes, it exploded with a force so great that it lifted the car onto the curb, knocked over a firefighter, and damaged our boat parked 10 feet across the street. The inspector from the fire department determined the initial fire was from faulty electrical wiring but said he had never seen a car explode in his 25 years on the force. Toyota conducted their own investigation and agreed it was electrical but could not determine fault due to the severity of the damage (ID # 1121578)

**b) 2017 Toyota RAV4**

i.   NHTSA Complaint from March 10, 2021: TL* The contact owned a 2017 Toyota RAV4. The contact stated that after parking and exiting the vehicle, she noticed smoke coming from the engine then the engine caught fire. The vehicle was towed and the insurance company deemed it totaled. The contact informed the dealer Jay Wolfe Toyota of West County (14700 Manchester Rd, Ballwin, MO 63011) and the manufacturer of the failure. The failure mileage was 50,000. (ID # 11400228)

ii.   NHTSA Complaint from March 5, 2021 (Irmo, SC): While I was at my local dealership they let me know my battery kept coming back weak. I have also

noticed how my car seems to almost stall out sometimes while driving. It hasn?t but this makes me very nervous while driving (ID # 11399365)

iii.  NHTSA Complaint from March 5, 2021 (West Warwick, RI): I was stopped at a red light and suddenly the battery light came on and the car shut down completely. I could not steer or move. After a moment I was able to start the car and proceed home. That was the only time it has happened and it occurred in October of 2020. I brought the car to my mechanic a few days later and they could not find a problem. Invoice is attached. (ID # 11399310)

iv.  NHTSA Complaint from March 2, 2021 (Cedar Hill, TX): Please see attached sheet for all that has happened since I purchased the car. I've had to replace the battery 2 times in 3 years as well. I have new battery and it became corroded fast. My car kept telling me there was an electrical issue and the check engine light would come on and all of the fails led to the transmission issues. (ID # 11398650)

v.  NHTSA Complaint from August 11, 2020 (Lyons, CO): TL* The contact owned a 2017 Toyota RAV4 hybrid. the contact stated that while driving approximately 50 mph, the check engine light suddenly illuminated, warning messages began to display on the dash screen; before white smoke was present coming from under the hood of the vehicle. Moments later flames were coming from the engine compartment. The fire department was called to the scene and extinguished the flames. During the incident, the vehicle was destroyed and towed away. The cause of the failure was not determined. The manufacturer and local dealer Larry Miller Toyota (2465 48th Ct. Boulder, CO 80301) were notified of the incident. The failure mileage was 66,500. (ID # 11348663)

vi.  NHTSA Complaint from June 3, 2020 (Manvel, TX): I had own 2017 Toyota RAV4le for less than 3 years and less then 25000 mile, we follow the instructions to have a schedule maintenance. We have never experience any problem at all, overall it was good driving car. However, on 5/4/2020, I parked my car at parking lot, turned off engine. I heard gentle click click two sound, do not realized it was from my car (other people was unload stuff). I open the driver side door get ready to off my car and go. I smelled rubber burning. I look around and see my engine had light smoke came out from engine, then became darker smoke, and follow by fire. I called 911, they send a fire department to put off the fire for me. My Toyota RAV4 le was all burned by unknown reason. I do not smoke, I paid off my car and I have no financial gain to have car burn. I just want to warning other owner, it could happened to you, I was lucky to be able to work out from my burning vehicle. My car was under

warranty, but Toyota dealer stated that they would not able to honor such warranty, asked me call headquarter, I tried to email but after I upload pictures and it was suddenly intercepted in the cloud-disappear. I am report this incident to warning others. *TR (ID # 11327143)

vii.   <u>NHTSA Complaint from March 11, 2020 (Seattle, WA)</u>: While I was driving home from work on Thursday, March 5, 2020, I smelled smoke. I looked at the temperature on the dashboard and it showed that the temperature was a little below the middle line indicating the vehicle was not hot. I continued driving for a couple more blocks and continued to smell smoke so attempted to pull over into a parking lot. When I tried to pull over, the vehicle stopped on its own so i was half way between the street and parking lot. I saw smoke come out from under the hood of the vehicle. About two minutes later, flames started coming out from under the hood. The vehicle caught fire. (ID # 11317639)

viii.  <u>NHTSA Complaint from February 10, 2020 (Baltimore, MD)</u>: TL* The contact owned a 2017 Toyota RAV4. The contact stated that while her daughter was making a turn the steering wheel ceased as white smoke was seen coming from under the hood. the contact stated that the vehicle came to a stop as flames were seen coming from under the hood and from underneath the vehicle. the contact's daughter was able to exit the vehicle with no injuries. The fire department was called and extinguhised the fire. A fire department report was filed. the contact stated was awaiting inspection by the insurance company. The manufacturer the dealership was made of aware of the failure. the vehicle failure was not diagnosed by a dealer or independent mechanic. The manufacturer was made aware of the failure, however no assistance was offered. the approximate failure mileage was 57,000. (ID # 11308368)

ix.    <u>NHTSA Complaint from August 20, 2019</u>: TL* The contact owns a 2017 Toyota rav4. While driving approximately 10 mph, the vehicle stalled. in addition, the traction control and charging system malfunction indicators illuminated. the vehicle was able to restart and was taken to Toyota of Hollywood (6000 Hollywood Blvd., Hollywood CA, 323-498-2260) to be diagnosed. the results were unknown. The vehicle was being repaired under warranty. the manufacturer was not contacted. the failure mileage was 27,220. (ID # 11245340)

x.     <u>NHTSA Complaint from June 1, 2018 (Verona, PA)</u>: I was driving home and at a red light when my RAV4 started to shake and feel as though it was going to stall out. Everything shut down and I was unable to move. I received the

following error on our display, "charging system malfunction". After a few seconds I was able to turn my vehicle on and proceed through the intersection. Approximately one minute later it started to stutter again. I was able to make it to my driveway before it turned off and lost power. I informed my husband what had happened and he took the vehicle out to see if the same error would occur. Within five minutes into his drive the vehicle shut off. We had it towed to our Toyota dealership, as we just purchased this RAV4 brand new nine months ago. The service department conducted multiple tests and informed us that everything was fine. It is a little unnerving to know that the vehicle I drive could completely turn off, potentially on a busy highway. The risk for serious injury or death, to me or my family, is high if this occurs. Again, to recap, the vehicle shut down while stopped at a red light and also when it was in motion. (ID # 1100181)

c) **2016 Toyota RAV4**

i. NHTSA Complaint from March 9, 2021 (Lakewood, NJ): While driving on a local road I started to lose electrical power. At first I lost power steering and shortly after the heat stopped working and all the lights on the dashboard lit up. When I brought the car to be diagnosed the fuse box had been burned and wires melted and there was smoke indicating there had been a fire around the fuse/electrical area (ID # 11399953)

ii. NHTSA Complaint from March 3, 2021 (San Antonio, TX): My brand new car caught fire in the front while it was parked outside a restaurant. I came outside to leave and it was towed away. The car was totaled from the fire. I saw the RAV4 investigation is happening and wanted to make sure you had my report included. the fire happened in the front left (as it was stated in the article other cars). I can send you additional details if needed but everything is matching up with the other incidents. it was a brand new car which is why it was such a strange event. (ID # 11398858)

iii. NHTSA Complaint from March 2, 2021 (Stafford, VA): TL* The contact owned a 2016 Toyota RAV4. while her husband was making a right turn at 30 mph, the vehicle abruptly shut off without warning; however, her husband was able to restart the vehicle upon depression of the accelerator pedal. as they continued to drive, the failure occurred two more times and after the third failure, a blackish smoke began to emit from underneath the front passenger side of the hood. The contact's husband was able to exit the vehicle and extinguish the fire with a water bottle. The authorities were called to the scene, and the fire department removed the battery from the vehicle. a fire and police

report were filed; no injuries were reported. due to the failure, the vehicle was towed to Sheehy Toyota of StafToyota(95 Garrisonville Rd, StafToyota, VA 22554) where they initially gave the contact an estimate to replace the vehicle parts in order to check if the vehicle was still operable. Due to the high cost of the repair, her insurance company deemed the vehicle total loss and was destroyed. The manufacturer had yet to be notified of the failure. the vehicle had been destroyed. the failure mileage was 44,156. (ID # 11398767)

iv.   NHTSA Complaint from October 3, 2017 (Houston, TX): I was driving on the highway and smoke began to fill my vehicle. I pulled over and my vehicle caught fire. Unsure of the cause. (ID # 11031632)

**d) 2015 Toyota RAV4**

i.   NHTSA Complaint from March 17, 2021 (Venice, FL): The vehicle stalled while i was driving on a highway at approximately 55 mph. I had been driving for 15 minutes. I lost power at the dashboard, lost power steering, and the engine stopped running. I coasted to a side street and stopped the car. I opened the hood, and discovered a fire in the engine compartment. The battery cable closest to the engine was on fire, and had melted one corner of the battery. A passerby helped extinguish the fire, and the fire department was called to inspect and make sure the fire was out. Earlier that day, the vehicle stalled in the same way while driving approximately 5 mph in a parking lot, but the power came back in a few seconds. Immediately preceding that was a 1-hour drive at interstate highway speeds with no troubles. (ID # 11403613)

ii.   NHTSA Complaint from September 29, 2020 (Westminster, CA): The car was running on the street in the city when it suddenly stopped, fire and smoke rose from the battery's side. After extinguishing the fire, the vehicle could not move, and had to call the tow truck to the repair shop. I have witnesses. (ID # 11398820)

iii.   NHTSA Complaint from March 3, 2020 (Rockville, MD): Shortly after driving with no issues, the parked car started to smoke from underneath the hood. within seconds, a large fire had started which completely consumed the car and also spread to my wife's car and the house's carport. Insurance investigator informed us that the fire likely started in/near the engine towards the drivers side based on where the hottest parts of the fire appeared to have been. however, no conclusive determination was made regarding the cause. The car was in good condition and had not had any maintenance work performed on it recently. There were also no signs of intrusion by rodents or other animals.

This happened with no warning. I've also since learned this had happened only one month before to the parents of one of our childrens' friends. They also had a RAV4, although not the same model year (i believe it was a 2013). I have also seen many other reports while researching this issue. If there is a defect or design flaw contributing to these fires, it should be addressed quickly! (ID # 11315799)

iv. <u>NHTSA Complaint from February 25, 2020 (Rutledge, TN)</u>: I was driving on the interstate entrance ramp when the battery died but then i was able to start it back and drove just a short distance when the hood started smoking. I pulled over and turned the motor off and raised the hood, and the battery was on fire. the battery and electrical system burned. (ID # 11311546)

v. <u>NHTSA Complaint from August 27, 2019 (Yonkers, NY)</u>: I drove for a few seconds, less than a block out of a parking lot, onto a local street, when my 2015 RAV4 suddenly shut down and smoke starting coming out from under the hood. I turned the steering wheel to roll to the side of the road and get out of the way of traffic, and got out of the car to walk far away. I saw flames under the front of the car and called 911. (ID # 11246595)

vi. <u>NHTSA Complaint from October 7, 2018 (McKinney, TX)</u>: Car stalled so I pulled over. There was smoking under the hood. Within minutes it turned into a big fire. Fire department had to be called. (ID # 1113884)

e) **2014 Toyota RAV4**

i. <u>NHTSA Complaint from April 7, 2021 (Gnadenhutten, OH)</u>: On March 20, my 2014 Toyota RAV4 caught fire. It was parked in my garage and had not been moved for at least 24 hours. The car fire caught the rafters in my attached garage and then caught the rest of my home on fire. (ID #11406924)

ii. <u>NHTSA Complaint from March 24, 2021 (Park City, UT)</u>: While I was driving in Capitol Reef National Park on a well graded and fully maintained dirt road, all the lights in my dash started flickering, and then my cars engine shut down. It felt like I was driving / coasting in neutral. I pulled over and put the car in park, then smoke started coming from beneath the hood. I got out of the car. It was a little smoke, then more, and then subsided to being barley noticeable after a couple of minutes. After it subsided, I got back in the car to try to start it, hoping it was an overheated engine and I might get the car to turn over. It would not start. I called a tow truck. Shortly after that, I noticed a hissing noise coming from beneath the hood, saw a liquid dripping beneath the the front left

(drivers side) part of the car. I also saw a small flame. I called 911 to report that my car was on fire. Within 10-15 minutes, the car was completely engulfed in flames. The park ranger, sheriff, and fire department showed up shortly after that. A charred car frame is essentially what's left. (ID # 11404722)

iii.   <u>NHTSA Complaint from March 2, 2021 (Glennallen, AK)</u>: Over the past three months, the electrical system will restart while I'm driving, usually when flicking on my brights. I got the car checked and the mechanics stated it probably was from the build up on the battery. There were a couple days when the battery was completely dead. Thanks for any advice. (ID # 11398781)

iv.   <u>NHTSA Complaint from January 22, 2021 (Ponte Vedra Beach, FL)</u>: TL* the contact owned a 2014 Toyota RAV4. The contact stated while driving approximately 5 mph, the vehicle caught on fire coming in the driver's side engine compartment. the fire department was contacted and arrived at the scene and extinguished the fire. the vehicle was towed to independent mechanic where it was deemed a total loss. Upon investigation, the contact associated the failure with NHTSA campaign number: 15v011000 (trailer hitches, exterior lighting) however, the vin was not included. The manufacturer was not informed of the failure. The failure mileage was approximately 51,000. (ID # 11394683)

**f) <u>2013 Toyota RAV4</u>**

i.   <u>NHTSA Complaint from May 1, 2021 (Canton, MA)</u>: The car was parked and off. The engine compartment burst into flames. Firefighters had to extinguish. Car is a total loss. (ID # 114723)

ii.   <u>NHTSA Complaint from April 7, 2021</u>: TL* The contact owns a 2013 Toyota RAV-4. The contact stated the while the vehicle was parked, the contact stated they noticed smoke coming from underneath the hood from the engine. The contact got out the vehicle and called 911. The vehicle engulfed in flames and no one was injured during the fire. The fire department was notified and extinguished the fire. a fire department report was filed. There was no warning light illuminated. The vehicle was towed to a tow yard. The vehicle was not inspected or diagnosed by insurance company. The manufacturer was not made aware of the failure. The failure mileage was 75,000. (ID # 11406921)

iii.   <u>NHTSA Complaint from December 7, 2020</u>: Vehicle was parked in parking lot, ignition turned off. Left car for approximately 1-2 minutes, returned to parking lot to find vehicle had caught fire. Fire appeared to originate in front

of vehicle. Fire department was called and fire extinguished. Most of damage done to front of vehicle and passenger compartment. Vehicle destroyed. (ID # 11378273)

iv. <u>NHTSA Complaint from March 10, 2016</u>: The engine started on fire under normal driving conditions. The car was not involved in any accident. The RAV4 Limited was totaled. It was less than 3 years old and had 17,500 miles on it. The care was serviced regularly by Toyota. The last service was about 4 months prior to the fire. Toyota has not honored their 3YR/36,000 mile warranty coverage on the car. Toyota has not offered a replacement car, rental or anything. Every time we call our Toyota case manager or legal department managers, we have to leave a message and they never return our calls. (ID # 10860544)

104. Toyota failed to disclose the Battery Defect. As a result, Toyota has caused RAV4 drivers to spend money and time at its dealerships or other third-party repair facilities and/or take other remedial measure related to the Battery Defect in the Class Vehicles.

105. As evidenced by the voluminous consumer complaints made to NHTSA and posted to online forums, Toyota was put on sufficient notice regarding sudden loss of vehicle power, stalling, smoke, and fire.

106. The existence of the Battery Defect is a material fact that a reasonable consumer would consider when deciding whether to purchase or lease a Class Vehicle. Had Plaintiffs and other Class Members known of the Battery Defect, they would have paid less for the Class Vehicles or would not have purchased or leased them.

107. Reasonable consumers, like Plaintiffs, reasonably expect that a vehicle's battery is safe, will function in a manner that will not pose a safety risk, and are free of defects, all of which were not true with respect to the batteries in the Class Vehicles. They also expected that the Class Vehicles would be fit for their ordinary purposes and would confirm to the promises and affirmations on their window stickers and in Toyota marketing materials, which they could not due to the Battery Defect. Plaintiffs and Class Members further reasonably expected that

Toyota would not sell or lease vehicles with a known safety defect such as the Battery Defect, and would disclose any such defects to its consumers when it learns of them. They did not expect Toyota to fail to disclose the Battery Defect to them and to continually deny it.

**C. Toyota Has Actively Concealed the Battery Defect**

108.   Despite knowing of the existence of the Battery Defect, Toyota continues to conceal the existence and nature of the defect from Plaintiffs and Class Members and failed to issue a Technical Tip or TSB to its dealerships informing them that they should acknowledge the problem and reveal it to prospective buyers.

109.   Nor has Toyota informed potential purchasers and lessees of the Battery Defect and its corresponding safety risk.

110.   Specifically, Toyota failed to disclose or actively concealed at and after the time of purchase, lease, or repair:

a.   any and all known material defects or material nonconformity of the Class Vehicles, including the defects pertaining to the battery;

b.   that the Class Vehicles, including the batteries, were unsafe, not in good in working order, not merchantable, defective, and not fit for their intended or particular purposes; and

c.   that the Class Vehicles and the Batteries were defective, despite the fact that Toyota learned of such defects before it placed the Class Vehicles in the stream of commerce.

111.   Defendants have deprived Class Members of the benefit of their bargain, exposed them all to a dangerous safety Defect, and caused them to expend money at their dealerships and/or be unable to drive their vehicles for long stretches of time while they are being constantly repaired or completely lose the use of their vehicles if destroyed by fire.

112.   Moreover, when vehicles are brought to Defendants' dealers for repair, Class Members are provided with ineffective repairs in which one defective Battery is replaced with another defective Battery.

113.   As a result, Class Members continue to experience the Battery Defect despite having repairs. Because many Class Members, like Plaintiffs, are current owners or lessees who rely on their vehicles on a daily basis, compensation for repairs, related expenses (e.g. towing), and diminution in value is not sufficient. A remedial scheme which also makes available a fix and/or warranty extension is necessary to make Class Members whole.

114.   Defendants have not recalled all the Class Vehicles to repair the Battery Defect, have not offered to its customers a free suitable repair or free replacement of parts related to the Battery Defect, under the recall or otherwise, and have not reimbursed all Class Vehicle owners and leaseholders who incurred costs for repairs related to the Battery Defect.

115.   Class Members have not received the value for which they bargained when they purchased or leased the Class Vehicles.

116.   As a result of the Battery Defect, the value of the Class Vehicles has diminished, including without limitation, the resale value of the Class Vehicles.

117.   The existence of the Battery Defect is a material fact that a reasonable consumer would consider when deciding whether to purchase or lease a Class Vehicle. Whether a vehicle's battery can operate as expected is material safety concern. Had Plaintiffs and other Class Members known of the Battery Defect, they would have paid less for the Class Vehicles or would not have purchased or leased them.

**D. The Agency Relationship Between Toyota Motor Sales, U.S.A., Inc., and its Network of Authorized Dealerships**

87.   In order to sell vehicles to the general public, TMS enters into agreements with its nationwide network of authorized dealerships to engage in retail

sales with consumers such as Plaintiffs. In return for the exclusive right to sell new, TMS-branded vehicles, the authorized dealerships are also permitted under these agreements with TMS to service and repair these vehicles under the warranties TMS provides directly to consumers who purchased new vehicles from the authorized dealerships. Accordingly, TMS's authorized dealerships are TMS's agents, and the consumers who purchase or lease TMS vehicles are the third-party beneficiaries of these dealership agreements, which allow the consumers to purchase and service their TMS vehicles locally. Because Plaintiffs and members of the Class there are third-party beneficiaries of the dealership agreements which create the implied warranty, they may avail themselves of the implied warranty. This is true because third-party beneficiaries to contracts between other parties that create an implied warranty of merchantability may avail themselves of the implied warranty. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1185 (C.D. Cal. 2010).

98.     Further, Plaintiffs and each of the members of the Class are the intended beneficiaries of TMS's express and implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles, and they have no rights under the warranty agreements provided by TMS. TMS's warranties were designed for and intended to benefit the consumers only. The consumers are the true intended beneficiaries of TMS's express and implied warranties, and the consumers may therefore avail themselves of those warranties.

99.     TMS issued the express warranty to the Plaintiffs and the Class members. TMS also developed and disseminated the owner's manual and warranty booklets, advertisements, and other promotional materials relating to the Class Vehicles. TMS also is responsible for the content of the Monroney Stickers on TMS-branded vehicles. Because TMS issues the express warranty directly to the consumers, the consumers are in direct privity with TMS with respect to the warranties

100. In promoting, selling, and repairing its defective vehicles, TMS acts through numerous authorized dealers who act, and represent themselves to the public, as exclusive TMS representatives and agents. That the dealers act as TMS's agents is demonstrated by the following facts:

a. The authorized Toyota dealerships complete all service and repair according to TMS's instructions, which TMS issues to its authorized dealerships through service manuals, technical service bulletins ("TSBs"), technical tips ("TT"), and other documents;

b. Consumers are able to receive services under TMS's issued New Vehicle Limited Warranty only at TMS's authorized dealerships, and they are able to receive these services because of the agreements between TMS and the authorized dealers. These agreements provide TMS with a significant amount of control over the actions of the authorized dealerships;

c. The warranties provided by TMS for the defective vehicles direct consumers to take their vehicles to authorized dealerships for repairs or services;

d. TMS dictates the nature and terms of the purchase contracts entered into between its authorized dealers and consumers;

e. TMS controls the way in which its authorized dealers can respond to complaints and inquiries concerning defective vehicles, and the dealerships are able to perform repairs under warranty only with TMS's authorization;

f. TMS has entered into agreements and understandings with its authorized dealers pursuant to which it authorizes and exercises substantial control over the operations of its dealers and the dealers' interaction with the public; and

g. TMS implemented its express and implied warranties as they relate to the defects alleged herein by instructing authorized TMS dealerships to address complaints of the Defect by prescribing and implementing the relevant TSBs cited herein.

101.  Indeed, Toyota's warranty booklets make it abundantly clear that Toyota's authorized dealerships are Toyota's agents for vehicle sales and service. The booklets, which are plainly written for the consumers, not the dealerships, tell the consumers repeatedly to seek repairs and assistance at its "authorized dealerships." For example, at the outset, Toyota notifies Plaintiffs and class members in the warranty booklet that coverage applies only to vehicles "**originally sold by an authorized dealer**" and that "**[t]he decision whether a part would be repaired or replaced will be made by the servicing Toyota dealership and/or Toyota**." Further, the booklets state "Both Toyota and your Toyota dealer are dedicated to serving your automotive needs." The booklets direct Plaintiffs and class members, should they have a problem or concern, to first "discuss the situation with a dealership manager, such as the service manager or customer relations manager. In most cases, a satisfactory solution can be reached at this step." Toyota than directs Plaintiffs and class members: "If the dealership does not address your concern to your satisfaction, to "call the Toyota Customer Experience Center" and notify Toyota of the VIN number, the mileage, and "the name of your Toyota dealership." Then, "A Toyota customer relations representative will assist you in working with the dealership to find a satisfactory solution."

102.  Additionally, the transportation assistance component of the New Vehicle Limited Warranty, which provides transportation assistance if the vehicle must be kept overnight for warranty-covered repairs, applies only to vehicles "sold and serviced by authorized Toyota dealerships…"

103.  Accordingly, as the above paragraphs demonstrate, the authorized dealerships are agents of TMS. Plaintiffs and each of the members of the Class have

had sufficient direct dealings with either TMS or its agent dealerships to establish privity of contract between TMS, on one hand, and Plaintiffs and each of the members of the Class, on the other hand. This establishes privity with respect to the express and implied warranty between Plaintiffs and TMS.

### E. Tolling of the Statute of Limitations

**Discovery Rule Tolling**

104.   Plaintiffs and Class Members could not have discovered through the exercise of reasonable diligence that their Class Vehicles were defective within the time period of any applicable statutes of limitation.

105.   Among other things, neither Plaintiffs nor the other Class Members knew or could have known that the Class Vehicles are equipped with 12V Batteries with the Battery Defect, which causes B+ terminal shorts, resulting in sudden loss of vehicle power, stalling, smoke, and fire.

106.   Further, Plaintiffs and Class Members had no knowledge of the Defect and it occurred in a part of the vehicle that was not visible to consumers. Toyota attempted to squelch public recognition of the Battery Defect by failing to remedy the Battery Defect or reimburse Class Members. Accordingly, any applicable statute of limitation is tolled.

**Fraudulent Concealment Tolling**

107.   Throughout the time period relevant to this action, Toyota concealed from and failed to disclose to Plaintiffs and the other Class Members vital information about the Battery Defect described herein.

108.   Toyota kept Plaintiffs and the other Class Members ignorant of vital information essential to the pursuit of their claims. As a result, neither Plaintiffs nor the other Class Members could have discovered the Defect, even upon reasonable exercise of diligence.

109.   Throughout the Class Period, Toyota has been aware that the Batteries it designed, manufactured, and installed in the Class Vehicles contained the Battery

Defect, resulting in loss of vehicle power, stalling, smoke, and fire, placing Plaintiffs and other drivers in unsafe situations.

110.   Despite its knowledge of the Defect, Toyota failed to disclose and concealed, and continues to conceal, this critical information from Plaintiffs and the other Class Members, even though, at any point in time, it could have disclosed the Battery Defect through individual correspondence, media release, a recall, or by other means.

111.   Plaintiffs and the other Class Members justifiably relied on Toyota to disclose the Battery Defect in the Class Vehicles that they purchased or leased, because the Defect was hidden and not discoverable through reasonable efforts by Plaintiffs and the other Class Members.

112.   Thus, the running of all applicable statutes of limitation have been suspended with respect to any claims that Plaintiffs and the other Class Members have sustained as a result of the Defect, by virtue of the fraudulent concealment doctrine.

**Estoppel**

113.   Toyota was under a continuous duty to disclose to Plaintiffs and the other Class Members the true character, quality, and nature of the unsafe and defective Batteries.

114.   Toyota knowingly concealed the true nature, quality, and character of the defective Batteries from consumers.

115.   Based on the foregoing, Toyota is estopped from relying on any statutes of limitations in defense of this action.

**F. CLASS ACTION ALLEGATIONS**

116.   Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and/or (b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

117.   The Class and Sub-Class are defined as:

**Class :** All individuals in the United States who purchased or leased a Class Vehicle.

**Florida Sub-Class:** All Class Members who reside in or purchased or leased their Class Vehicle in the State of Florida.

**Illinois Sub-Class:** All Class Members who reside in or purchased or leased their Class Vehicle in the State of Illinois.

**New Hampshire Sub-Class:**  All Class Members who reside in or purchased or leased their Class Vehicle in the State of New Hampshire.

**Missouri Sub-Class:** All Class Members who reside in or leased their Class Vehicle in the State of Missouri.

118.   Excluded from the Class and Sub-Classes are: (1) Defendants, any entity or division in which Defendants has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) any Judge sitting in the presiding state and/or federal court system who may hear an appeal of any judgment entered; and (4) those persons who have suffered personal injuries as a result of the facts alleged herein.

119.   Plaintiffs reserves the right to amend or modify the Class and Sub-Class definitions after they have had an opportunity to conduct discovery.

120.   Numerosity: Fed. R. Civ. P. 23(a)(1). Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, that discovery will show that, tens of thousands of Class Vehicles have sold in the United States, and thousands within California.  The number is great enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and

records in Defendants' possession, custody, or control, as well as from records kept by the Department of Motor Vehicles.

121.   <u>Commonality</u>: Fed. R. Civ. P. (b)(3). There are numerous questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a.      whether the Class Vehicles and their Batteries are defectively designed or manufactured such that they are not suitable for their intended use;

b.      whether the fact that the Class Vehicles suffer from the Battery Defect would be considered material to a reasonable consumer;

c.      whether, as a result of Toyota's concealment or failure to disclose material facts, Plaintiffs and Class Members acted to their detriment by purchasing Class Vehicles manufactured by Toyota;

d.      whether Toyota was aware of the Battery Defect;

e.      whether the Battery Defect constitutes an unreasonable safety risk;

f.      whether Plaintiffs and the other Class Members are entitled to equitable relief, including a preliminary and/or permanent injunction;

g.      whether Defendants should be declared financially responsible for notifying the Class Members of problems with the Class Vehicles and for the costs and expenses of repairing and replacing the defective batteries;

h.      whether Toyota breached its express and/or implied warranties with respect to the Class Vehicles;

i.      whether Toyota violated consumer protection laws for failing to notify Plaintiffs and Class Members about the Battery Defect;

j.      whether Toyota has a duty to disclose the defective nature of the Class Vehicles and the Battery Defect to Plaintiffs and Class Members;

k.      whether Plaintiffs and Class Members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction;

l.      whether Toyota violated the Magnusson-Moss Warranty Act when it sold Class Vehicles with the Battery Defect to consumers; and

m.      whether damages, restitution, equitable, injunctive, compulsory or other relief are warranted.

122.   Typicality: Fed. R. Civ. P. 23(a)(2).  Plaintiffs' claims are typical of the claims of the Class in that Plaintiffs, like all Class Members, purchased or leased a Class Vehicle designed, manufactured, and distributed by Toyota. The representative Plaintiffs, like all Class Members, have been damaged by Defendants' misconduct in that they have incurred or will incur the cost of repairing or replacing their vehicles due to the Battery Defect. Furthermore, the factual bases of Toyota's misconduct are common to all Class Members and represent a common thread resulting in injury to the Class.

123.   Adequate Representation: Plaintiffs will fairly and adequately protect the interests of Class Members. Plaintiffs has retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intends to prosecute this action vigorously.

124.   Predominance and Superiority: Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of Toyota's unlawful and wrongful conduct.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Toyota's misconduct.  Absent a class action, Class Members will continue to incur damages, and Toyota's misconduct will continue without remedy.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or

piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

## V.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION
VIOLATION OF MAGNUSON-MOSS WARRANTY ACT
(15 U.S.C. § 2301, *et seq.*)
(Plaintiffs, individually, and on behalf of the Class against all Defendants)

125.    Plaintiffs incorporate by reference and realleges the preceding paragraphs as if fully set forth herein.

126.    Plaintiffs bring this cause of action for themselves and on behalf of the Class against all Defendants.

127.    This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. §§ 1332(a) and (d).

128.    Plaintiffs and Class Members are "consumers" within the meaning of 15 U.S.C. § 2301(6).

129.    Toyota is a "supplier" and "warrantor" within the meaning of 15 U.S.C. § 2301(6).

130.    The Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(6).

131.    15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written warranty.

132.    Toyota's express warranties are each a "written warranty" within the meaning of 15 U.S.C. § 2301(6).

133.    As discussed herein, Toyota extended a three-year/36,000-mile New Vehicle Limited Warranty with the purchase or lease of the Class Vehicles, thereby warranting to repair or replace any part defective in material or workmanship at no cost to the owner or lessee.

134.    Toyota breached each of these express warranties by:

     a.  Selling and leasing Class Vehicles with batteries that were defective in material and/or workmanship, requiring repair or replacement within the warranty period; and

     b.  refusing and/or failing to honor the express warranties by repairing or replacing, free of charge, any defective component parts.

135.   Toyota's breach of express warranty has deprived Plaintiffs and Class Members of the benefit of their bargain.

136.   The matter in controversy exceeds the sum or value of $5,000,000.00 exclusive of interest and costs, and there are over 100 Class Members.

137.   Toyota has been afforded a reasonable opportunity to cure its breach of written warranties, including when Toyota consumers brought their vehicles in for diagnosis and repair of the Battery Defect.

138.   As a direct and proximate cause of Toyota's breach of written warranties, Plaintiffs and Class Members sustained damages and other losses in an amount to be determined at trial. Toyota's conduct damaged Plaintiffs and Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution of value, costs, including statutory attorneys' fees and/or other relief as appropriate.

## SECOND CAUSE OF ACTION
### FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT,
(Fla. Stat. § 501.201, *et seq.*)
(Plaintiff Guevara individually, and on behalf of the Florida Sub-class against all Defendants)

139.   Plaintiffs incorporates by reference and realleges the preceding paragraphs as if fully set forth herein.

140.   Plaintiff Guevara ("Florida Plaintiff") brings this cause of action individually and on behalf of the Florida Sub-class against all Defendants.

141.   Florida Plaintiff and the Florida Sub-Class Members are "consumers[s]" under the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA"), Fla. Stat. § 501.203(7).

142.   Toyota engaged in "trade or commerce" in Florida within the meaning of the FDUPTA. See Fla. Stat. § 501.203(8).

143.   The FDUPTA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

144.   Toyota engaged in deceptive trade practices in violation of the FDUPTA by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the defective batteries installed in them. Toyota's deceptive business practices include: (i) representing that its vehicles had characteristics, uses, or benefits which they do not have; (ii) advertising its goods with intent not to sell them as advertised; (iii) representing that its vehicles are of a particular standard, quality, or grade when they are not; (iv) representing that a transaction conferred or involved rights, remedies, or obligations which they do not; and (v) representing that its goods have been supplied in accordance with a previous representation when they have not.

145.   Toyota owed Florida Plaintiff and Florida Sub-Class Members a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective batteries installed in them because Toyota: (a) possessed exclusive knowledge of the dangers and risks posed by the foregoing; (b) intentionally concealed the foregoing from Plaintiff; and/or (c) made incomplete representations about the safety and reliability of the foregoing generally, while withholding material facts from Florida Plaintiff and Florida Sub-Class Members that contradicted these representations.

146.   Toyota's failure to disclose and active concealment of the dangers and risks posed by the defective batteries in Class Vehicles were material to Florida Plaintiff and Florida Sub-Class Members. A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

147.   Florida Plaintiff and Florida Sub-Class Members suffered ascertainable loss caused by Toyota's misrepresentations and failure to disclose material information. Had they been aware of the defective batteries installed in the Class Vehicles, Florida Plaintiff and Florida Sub-Class Members either would have paid less for their vehicles or would not have purchased or leased them at all. Florida Plaintiff and Florida Sub-Class Members did not receive the benefit of their bargain as a result of Toyota's misconduct.

148.   Toyota knew or should have known that its conduct violated the FDUPTA.

149.   Toyota's violations present a continuing risk to Florida Plaintiff, the Florida Sub-Class, as well as to the general public. Toyota's unlawful acts and practices complained of herein affect the public interest.

150.   As a direct and proximate result of Toyota's violations of the FDUPTA, Florida Plaintiff and Florida Sub-Class Members have suffered injury-in-fact and/or actual damages.

151.   Florida Plaintiff and the Florida Sub-Class Members seek, inter alia, actual damages in an amount to be determined at trial, reasonable attorneys' fees; and any other just and proper relief available under the FDUPTA.  Because Toyota acted with willful and conscious disregard of the rights and safety of others, Toyota's conduct constitutes malice, oppression, and fraud warranting punitive damages.

**THIRD CAUSE OF ACTION**
BREACH OF EXPRESS WARRANTY
**(FLA. STAT.§§ 672.313 and 680.21)**
(Plaintiff Guevara individually, and on behalf of the Florida Sub-Class against TMS)

104.   Plaintiffs incorporate by reference and re-allege the preceding paragraphs as if fully set forth herein.

105.   Florida Plaintiff brings this cause of action individually and on behalf of the Florida Sub-Class against TMS.

106.   TMS is and was at all relevant times a "merchant" with respect to motor vehicles under Fla. Stat. §§ 672.104(1) and 680.1031(3)(k), and a "seller" of motor vehicles under § 672.103(1)(d ).

107.   With respect to leases, TMS is and was at all relevant times a "lessor" of motor vehicles under Fla. Stat. § 680.1031(1)(p).

108.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Fla. Stat. §§ 672.105(1) and 680.1031(1)(h).

109.   Florida Plaintiff and Class Members bought or leased Toyota RAV4 vehicles equipped with defective 12V Batteries.

110.   TMS made express warranties to Florida Plaintiff and Florida Sub-Class Members within the meaning of the warranty statutes.

111.   In the course of selling and leasing the Class Vehicles, TMS expressly warranted in writing that the vehicles were covered by certain warranties in TMS's "New Vehicle Limited Warranty" as described herein. This express warranty states that "[t]his warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota."

112.   The Battery Defect is covered by the New Vehicle Limited Warranty.

113.   The New Vehicle Limited Warranty as described was made part of the basis of the bargain when Plaintiff and Class Members bought or leased the Class Vehicles.

114.   TMS breached its express warranties to repair defects in materials and workmanship of any part supplied by TMS. TMS has not repaired, and has been unwilling to reasonably repair, the Battery Defect.

115.   Furthermore, the express warranties to repair defective parts fail in their essential purpose because the contractual remedy is insufficient to make Florida Plaintiff and Florida Sub-Class Members whole and because TMS has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

116.   Accordingly, recovery by Florida Plaintiff and Florida Sub-Class Members is not limited to the express warranties of repair to parts defective in materials or workmanship, and Plaintiff seeks all remedies as allowed by law.

117.   TMS was provided notice of these issues by numerous customer complaints regarding the Battery Defect before or within a reasonable amount of time after the allegations of the Defect became public.

118.   In addition, Florida Plaintiff himself gave notice of the Battery Defect in his vehicle via a letter to TMS on June 18, 2021.

119.   However, Florida Plaintiff was not required to notify TMS of its breach because giving TMS a reasonable opportunity to cure any breach of written warranty would have been futile. TMS was also on notice of the defect from the complaints and service requests it received from Class Members, from repairs and/or replacements of the Batteries or a component thereof, through the NHTSA investigation opened on February 25, 2021, and through other internal sources.

120.   Florida Plaintiff and other Florida Sub-Class members are entitled to statutory damages and other legal and equitable relief including, at their election, the purchase price of or a buyback of their TMS vehicles, or the overpayment or diminution in value of their Class Vehicles.

121.   Florida Plaintiff and Florida Sub-Class Members are also entitled to costs and reasonable attorneys' fees.

**FOURTH CAUSE OF ACTION**
BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
(F.S.A. §§ 672.314 and 680.212)
(Plaintiff Guevara individually, and on behalf of the Florida Sub-Class against all Defendants)

122.    Plaintiffs incorporate by reference and re-alleges the preceding paragraphs as if fully set forth herein.

123.    Florida Plaintiff brings this cause of action individually and on behalf of the Florida Sub-Class against all Defendants.

124.    Toyota is and was at all relevant times a "merchant" with respect to motor vehicles under Fla. Stat. §§ 672.104(1) and 680.1031(3)(k), and a "seller" of motor vehicles under § 672.103(1)(d ).

125.    With respect to leases, Toyota is and was at all relevant times a "lessor" of motor vehicles under Fla. Stat. § 680.1031(1)(p).

126.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Fla. Stat. §§ 672.105(1) and 680.1031(1)(h).

127.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law under Fla. Stat. §§ 672.314 and 680.212.

128.    Toyota was and is in actual or constructive privity with Plaintiff and Class Members.

129.    At all relevant times hereto, applicable law imposed upon Toyota a duty that the batteries installed in the Class Vehicles be fit for the ordinary purposes for which batteries are used and that they pass without objection in the trade under the contract description.

130.    Toyota has not validly disclaimed, excluded, or modified the implied warranties or duties described above, and any attempted disclaimer or exclusion of the implied warranties was an is ineffectual.

131.    The batteries installed in the Class Vehicles were defective at the time they left the possession of Toyota, as set forth above. Toyota knew of this Defect at

the time the purchase and lease transactions occurred. Thus, the Batteries installed in the Class Vehicles, when sold and at all times thereafter, were not in merchantable condition or quality because they are not fit for their ordinary intended purpose and they do not pass without objection in the trade under the contract description.

132.   Florida Plaintiff and Florida Sub-Class Members used the batteries installed in the Class Vehicles in a manner consistent with their intended use and performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Toyota or by operation of law in light of Toyota's unconscionable conduct.

133.   Toyota had actual knowledge of, and received timely notice regarding, the Defect at issue in this litigation and, notwithstanding such notice, failed and refused to offer an effective remedy.

134.   In addition, Toyota received, on information and belief, numerous consumer complaints and other notices from customers advising of the Defect associated with the batteries installed in the Class Vehicles.

135.   By virtue of the conduct described herein and throughout this Complaint, Toyota breached the implied warranty of merchantability.

136.   As a direct and proximate result of Toyota's breach of warranties, Florida Plaintiff and Florida Sub-Class Members suffered economic damage, including loss attributable to the diminished value of their Class Vehicles, loss of use of their Class Vehicles and other tangible property, as well as the monies spent and to be spent to repair and/or replace their batteries.

**FIFTH CAUSE OF ACTION**
ILLINOIS CONSUMER FRAUD
AND DECEPTIVE BUSINESS PRACTICES ACT ("CFA")
(815 Ill. Comp. Stat. 505/1, *et seq.*)
(Plaintiff Kurkowski individually, and on behalf of the Illinois Sub-Class against all Defendants)

152.   Plaintiffs incorporates by reference and reallege the preceding paragraphs as if fully set forth herein.

153.   Plaintiff Kurkowski ("Illinois Plaintiff") brings this cause of action individually and on behalf of the Illinois Sub-Class against all Defendants.

154.   Toyota is a "person" as that term is defined in 815 Ill. Comp. Stat. 295/1(c).

155.   Illinois Plaintiff and the proposed Illinois Sub-Class are "consumers" as that term is defined in 815 Ill. Comp. Stat. 505/1(e).

156.   The CFA prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact…in the conduct of trade or commerce…whether any person has in fact been misled, deceived or damaged thereby." 815 Ill. Comp. Stat. 505/2.

157.   Toyota engaged in deceptive trade practices in violation of the CFA by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the defective batteries installed in them. Toyota's deceptive business practices include: (i) representing that its vehicles had characteristics, uses, or benefits which they do not have; (ii) advertising its goods with intent not to sell them as advertised; (iii) representing that its vehicles are of a particular standard, quality, or grade when they are not; (iv) representing that a transaction conferred or involved rights, remedies, or obligations which they do not; and (v) representing that its goods have been supplied in accordance with a previous representation when they have not.

158.   Toyota owed Illinois Plaintiff and Illinois Sub-Class Members a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective batteries installed in them because Toyota: (a) possessed exclusive knowledge of the dangers and risks posed by the foregoing; (b) intentionally concealed the foregoing from Illinois Plaintiff; and/or (c) made incomplete representations about the safety

and reliability of the foregoing generally, while withholding material facts from Illinois Plaintiff and Illinois Sub-Class Members that contradicted these representations.

159.   Toyota's failure to disclose and active concealment of the dangers and risks posed by the defective batteries in Class Vehicles were material to Illinois Plaintiff and Illinois Sub-Class Members. A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

160.   Illinois Plaintiff and Illinois Sub-Class Members suffered ascertainable loss caused by Toyota's misrepresentations and failure to disclose material information. Had they been aware of the defective batteries installed in the Class Vehicles, Illinois Plaintiff and Illinois Sub-Class Members either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiff and Illinois Sub-Class Members did not receive the benefit of their bargain as a result of Ford's misconduct.

161.   Toyota knew or should have known that its conduct violated the CFA.

162.   Toyota's violations present a continuing risk to Illinois Plaintiff, the Illinois Sub-Class, as well as to the general public. Toyota's unlawful acts and practices complained of herein affect the public interest.

163.   As a direct and proximate result of Toyota's violations of the CFA, Illinois Plaintiff and Illinois Sub-Class Members have suffered injury-in-fact and/or actual damages.

164.   Pursuant to 815 Ill. Comp. Stat. 505/10a(a), Illinois Plaintiff and the Illinois Sub-Class seek monetary relief against Toyota in the amount of actual damages, as well as punitive damages because Toyota acted with fraud and/or malice and/or was grossly negligent.

165.   Illinois Plaintiff and the Illinois Sub-Class also seek an order enjoining Toyota's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under 815 Ill. Comp. Stat. 505/1 *et seq.*

**SIXTH CAUSE OF ACTION**
BREACH OF EXPRESS WARRANTY
(810 Ill. Comp. Stat. 5/2-313)
(Plaintiff Kurkowski individually, and on behalf of the Illinois Sub-Class against TMS)

166.   Plaintiffs incorporate by reference and re-allege the preceding paragraphs as if fully set forth herein.

167.   Illinois Plaintiff brings this cause of action individually and on behalf of the Illinois Sub-Class against TMS.

168.   TMS is and was at all relevant times a "merchant" with respect to motor vehicles under 810 Ill. Comp. Stat. §§ 5/2-104(1) and 5/2A-103(3), and a "seller" of motor vehicles under § 5/2-103(1)(d).

169.   With respect to leases, TMS is and was at all relevant times a "lessor" of motor vehicles under 810 Ill. Comp. Stat. § 5/2A-103(1)(p).

170.   The Class Vehicles are and were at all relevant times "goods" within the meaning of 810 Ill. Comp. Stat. §§ 5/2-105(1) and 5/2A-103(1)(h).

171.   Illinois Plaintiff and Class Members bought or leased Toyota RAV4 vehicles equipped with defective 12V Batteries.

172.   TMS made express warranties to Illinois Plaintiff and Illinois Sub-Class Members within the meaning of the warranty statutes.

173.   In the course of selling and leasing the Class Vehicles, TMS expressly warranted in writing that the vehicles were covered by certain warranties in TMS's "New Vehicle Limited Warranty" as described herein. This express warranty states that "[t]his warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota."

174.   The Battery Defect is covered by the New Vehicle Limited Warranty.

175.   The New Vehicle Limited Warranty as described was made part of the basis of the bargain when Plaintiff and Class Members bought or leased the Class Vehicles.

176.   TMS breached its express warranties to repair defects in materials and workmanship of any part supplied by TMS. TMS has not repaired, and has been unwilling to reasonably repair, the Battery Defect.

177.   Furthermore, the express warranties to repair defective parts fail in their essential purpose because the contractual remedy is insufficient to make Illinois Plaintiff and Illinois Sub-Class Members whole and because TMS has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

178.   Accordingly, recovery by Illinois Plaintiff and Illinois Sub-Class Members is not limited to the express warranties of repair to parts defective in materials or workmanship, and Plaintiff seeks all remedies as allowed by law.

179.   TMS was provided notice of these issues by numerous customer complaints regarding the Battery Defect before or within a reasonable amount of time after the allegations of the Defect became public.

180.   In addition, Illinois Plaintiff himself gave notice of the Battery Defect in his vehicle via a letter to TMS on June 18, 2021.

181.   However, Illinois Plaintiff was not required to notify TMS of its breach because giving TMS a reasonable opportunity to cure any breach of written warranty would have been futile. TMS was also on notice of the defect from the complaints and service requests it received from Class Members, from repairs and/or replacements of the Batteries or a component thereof, through the NHTSA investigation opened on February 25, 2021, and through other internal sources.

182.   Illinois Plaintiff and other Illinois Sub-Class members are entitled to statutory damages and other legal and equitable relief including, at their election, the purchase price of or a buyback of their TMS vehicles, or the overpayment or diminution in value of their Class Vehicles.

183.   Illinois Plaintiff and Illinois Sub-Class Members are also entitled to costs and reasonable attorneys' fees.

**SEVENTH CAUSE OF ACTION**
BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
(810 Ill. Comp. Stat. 5/2-314)
(Plaintiff Krukowski individually, and on behalf of the Illinois Sub-Class against all Defendants)

184.   Plaintiff incorporates by reference and re-alleges the preceding paragraphs as if fully set forth herein.

185.   Illinois Plaintiff brings this cause of action individually and on behalf of the Illinois Sub-Class against all Defendants.

186.   Toyota is and was at all relevant times a "merchant" with respect to motor vehicles under 810 Ill. Comp. Stat. §§ 5/2-104(1) and 5/2A-103(3), and a "seller" of motor vehicles under § 5/2-103(1)(d).

187.   With respect to leases, Toyota is and was at all relevant times a "lessor" of motor vehicles under 810 Ill. Comp. Stat. § 5/2A-103(1)(p).

188.   The Class Vehicles are and were at all relevant times "goods" within the meaning of 810 Ill. Comp. Stat. §§ 5/2-105(1) and 5/2A-103(1)(h).

189.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law under 810 Ill. Comp. Stat. §§ 5/2-314 and 5/2A-212.

190.   Toyota was and is in actual or constructive privity with Plaintiff and Class Members.

191.   At all relevant times hereto, applicable law imposed upon Toyota a duty that the batteries installed in the Class Vehicles be fit for the ordinary purposes for which batteries are used and that they pass without objection in the trade under the contract description.

192.   Toyota has not validly disclaimed, excluded, or modified the implied warranties or duties described above, and any attempted disclaimer or exclusion of the implied warranties was an is ineffectual.

193.   The batteries installed in the Class Vehicles were defective at the time they left the possession of Toyota, as set forth above. Toyota knew of this Defect at the time the purchase and lease transactions occurred. Thus, the Batteries installed in the Class Vehicles, when sold and at all times thereafter, were not in merchantable condition or quality because they are not fit for their ordinary intended purpose and they do not pass without objection in the trade under the contract description.

194.   Illinois Plaintiff and Illinois Sub-Class Members used the batteries installed in the Class Vehicles in a manner consistent with their intended use and performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Toyota or by operation of law in light of Toyota's unconscionable conduct.

195.   Toyota had actual knowledge of, and received timely notice regarding, the Defect at issue in this litigation and, notwithstanding such notice, failed and refused to offer an effective remedy.

196.   In addition, Toyota received, on information and belief, numerous consumer complaints and other notices from customers advising of the Defect associated with the batteries installed in the Class Vehicles.

197.   By virtue of the conduct described herein and throughout this Complaint, Toyota breached the implied warranty of merchantability.

198.   As a direct and proximate result of Toyota's breach of warranties, Illinois Plaintiff and Illinois Sub-Class Members suffered economic damage, including loss attributable to the diminished value of their Class Vehicles, loss of use of their Class Vehicles and other tangible property, as well as the monies spent and to be spent to repair and/or replace their batteries.

**EIGHTH CAUSE OF ACTION**
NEW HAMPSHIRE CONSUMER PROTECTION ACT,
(N.H. REV. STAT. ANN. § 358-A:1, *ET SEQ.*)
(Plaintiff Woodman individually, and on behalf of the New Hampshire Sub-class against all Defendants)

199. Plaintiffs incorporates by reference and realleges the preceding paragraphs as if fully set forth herein.

200. Plaintiff Woodman ("New Hampshire Plaintiff") brings this cause of action individually and on behalf of the New Hampshire Sub-class.

201. New Hampshire Plaintiff, the New Hampshire Sub-Class Members, and Toyota are "persons" under the New Hampshire Consumer Protection Act ("New Hampshire CPA"). N.H. Rev. Stat. § 358-A:1.

202. Toyotas actions as set forth herein occurred in the conduct of trade or commerce as defined under N.H. Rev. Stat. § 358-A:1.

203. The New Hampshire CPA prohibits a person in the conduct of any trade or commerce from using "any unfair or deceptive act or practice," including "but . . . not limited to the following: . . . (V) Representing that goods or services have . . . characteristics, . . . uses, benefits, or quantities that they do not have," "(VII) Representing that goods or services are of a particular standard, quality, or grade, . . . if they are of another," and "(IX) Advertising goods or services with intent not to sell them as advertised." N.H. Rev. Stat. § 358-A:2.

204. Toyota engaged in deceptive trade practices in violation of the New Hampshire CPA by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the defective batteries installed in them. Toyota's deceptive business practices include: (i) representing that its vehicles had characteristics, uses, or benefits which do not have; (ii) advertising its goods with intent not to sell them as advertised; (iii) representing that its vehicles are of a particular standard, quality, or grade when they are not; (iv) representing that a

transaction conferred or involved rights, remedies, or obligations which they do not; and (v) representing that its goods have been supplied in accordance with a previous representation when they have not.

205.   Toyota owed New Hampshire Plaintiff and New Hampshire Sub-Class Members a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective batteries installed in them because Toyota: (a) possessed exclusive knowledge of the dangers and risks posed by the foregoing; (b) intentionally concealed the foregoing from Plaintiff; and/or (c) made incomplete representations about the safety and reliability of the foregoing generally, while withholding material facts from New Hampshire Plaintiff and New Hampshire Sub-Class Members that contradicted these representations.

206.   Toyota's failure to disclose and active concealment of the dangers and risks posed by the defective batteries in Class Vehicles were material to New Hampshire Plaintiff and New Hampshire Sub-Class Members. A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

207.   New Hampshire Plaintiff and New Hampshire Sub-Class Members suffered ascertainable loss caused by Toyota's misrepresentations and failure to disclose material information. Had they been aware of the defective batteries installed in the Class Vehicles, New Hampshire Plaintiff and New Hampshire Sub-Class Members either would have paid less for their vehicles or would not have purchased or leased them at all. New Hampshire Plaintiff and New Hampshire Sub-Class Members did not receive the benefit of their bargain as a result of Toyota's misconduct.

208.   Toyota knew or should have known that its conduct violated the New Hampshire CPA.

209.   Toyota's violations present a continuing risk to New Hampshire Plaintiff, the New Hampshire Sub-Class, as well as to the general public. Toyota's unlawful acts and practices complained of herein affect the public interest.

210.   As a direct and proximate result of Toyota's violations of the New Hampshire CPA, New Hampshire Plaintiff and New Hampshire Sub-Class Members have suffered injury-in-fact and/or actual damages.

211.   Pursuant to N.H. Rev. Stat. § 358-A:10, New Hampshire Plaintiff and the New Hampshire Sub-Class Members seek recovery of actual damages or $1,000, whichever is greater, treble damages, costs and reasonable attorneys' fees, and any other just and proper relief available under N.H. Rev. Stat. § 358-A:10.

**NINTH CAUSE OF ACTION**
BREACH OF EXPRESS WARRANTY
(N.H. REV. STAT. §§ 382-A:2-313 AND 382-A:2A-210)
(Plaintiff Woodman individually, and on behalf of the New Hampshire Sub-Class against TMS)

137.   Plaintiffs incorporate by reference and re-allege the preceding paragraphs as if fully set forth herein.

138.   New Hampshire Plaintiff brings this cause of action individually and on behalf of the New Hampshire Sub-Class against TMS.

139.   TMS is and was at all relevant times a "merchant" with respect to motor vehicles under N.H. Rev. Stat. § 382-A:2-104(1), and a "seller" of motor vehicles under 382-A:2-103(1)(d).

140.   With respect to leases, TMS is and was at all relevant times a "lessor" of motor vehicles under N.H. Rev. Stat. § 382-A:2A-103(1)(p).

141.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.H. Rev. Stat. §§ 382-A:2-105(1) and 2A-103(1)(h).

142.   New Hampshire Plaintiff and Class Members bought or leased Toyota RAV4 vehicles equipped with defective 12V Batteries.

143.   TMS made express warranties to New Hampshire Plaintiff and New Hampshire Sub-Class Members within the meaning of the warranty statutes.

144.   In the course of selling and leasing the Class Vehicles, TMS expressly warranted in writing that the vehicles were covered by certain warranties in TMS's "New Vehicle Limited Warranty" as described herein. This express warranty states that "[t]his warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota."

145.   The Battery Defect is covered by the New Vehicle Limited Warranty.

146.   The New Vehicle Limited Warranty as described was made part of the basis of the bargain when Plaintiff and Class Members bought or leased the Class Vehicles.

147.   TMS breached its express warranties to repair defects in materials and workmanship of any part supplied by TMS. TMS has not repaired, and has been unwilling to reasonably repair, the Battery Defect.

148.   Furthermore, the express warranties to repair defective parts fail in their essential purpose because the contractual remedy is insufficient to make New Hampshire Plaintiff and New Hampshire Sub-Class Members whole and because TMS has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

149.   Accordingly, recovery by New Hampshire Plaintiff and New Hampshire Sub-Class Members is not limited to the express warranties of repair to parts defective in materials or workmanship, and Plaintiff seeks all remedies as allowed by law.

150.   TMS was provided notice of these issues by numerous customer complaints regarding the Battery Defect before or within a reasonable amount of time after the allegations of the Defect became public.

151.  In addition, New Hampshire Plaintiff himself gave notice of the Battery Defect in his vehicle via a letter to TMS on June 18, 2021.

152.  However, New Hampshire Plaintiff was not required to notify TMS of its breach because giving TMS a reasonable opportunity to cure any breach of written warranty would have been futile. TMS was also on notice of the defect from the complaints and service requests it received from Class Members, from repairs and/or replacements of the Batteries or a component thereof, through the NHTSA investigation opened on February 25, 2021, and through other internal sources.

153.  New Hampshire Plaintiff and other New Hampshire Sub-Class members are entitled to statutory damages and other legal and equitable relief including, at their election, the purchase price of or a buyback of their TMS vehicles, or the overpayment or diminution in value of their Class Vehicles.

154.  New Hampshire Plaintiff and New Hampshire Sub-Class Members are also entitled to costs and reasonable attorneys' fees.

**TENTH CAUSE OF ACTION**
BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
(N.H. Rev. Stat. §§ 382-A:2-314 and 382-A:2A-212)
(Plaintiff Woodman individually, and on behalf of the New Hampshire Sub-Class against all Defendants)

155.  Plaintiffs incorporate by reference and re-alleges the preceding paragraphs as if fully set forth herein.

156.  New Hampshire Plaintiff brings this cause of action individually and on behalf of the New Hampshire Sub-Class against all Defendants.

157.  Toyota is and was at all relevant times a "merchant" with respect to motor vehicles under N.H. Rev. Stat. § 382-A:2-104(1), and a "seller" of motor vehicles under 382-A:2-103(1)(d).

158.  With respect to leases, Toyota is and was at all relevant times a "lessor" of motor vehicles under N.H. Rev. Stat. § 382-A:2A-103(1)(p).

159.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.H. Rev. Stat. §§ 382-A:2-105(1) and 2A-103(1)(h).

160.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law under N.H. Rev. Stat. §§ 382-A:2-314 and 382-A:2A-212.

161.   Toyota was and is in actual or constructive privity with Plaintiff and Class Members.

162.   At all relevant times hereto, applicable law imposed upon Toyota a duty that the batteries installed in the Class Vehicles be fit for the ordinary purposes for which batteries are used and that they pass without objection in the trade under the contract description.

163.   Toyota has not validly disclaimed, excluded, or modified the implied warranties or duties described above, and any attempted disclaimer or exclusion of the implied warranties was an is ineffectual.

164.   The batteries installed in the Class Vehicles were defective at the time they left the possession of Toyota, as set forth above. Toyota knew of this Defect at the time the purchase and lease transactions occurred. Thus, the Batteries installed in the Class Vehicles, when sold and at all times thereafter, were not in merchantable condition or quality because they are not fit for their ordinary intended purpose and they do not pass without objection in the trade under the contract description.

165.   New Hampshire Plaintiff and New Hampshire Sub-Class Members used the batteries installed in the Class Vehicles in a manner consistent with their intended use and performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Toyota or by operation of law in light of Toyota's unconscionable conduct.

166.   Toyota had actual knowledge of, and received timely notice regarding, the Defect at issue in this litigation and, notwithstanding such notice, failed and refused to offer an effective remedy.

167.  In addition, Toyota received, on information and belief, numerous consumer complaints and other notices from customers advising of the Defect associated with the batteries installed in the Class Vehicles.

168.  By virtue of the conduct described herein and throughout this Complaint, Toyota breached the implied warranty of merchantability.

169.  As a direct and proximate result of Toyota's breach of warranties, New Hampshire Plaintiff and New Hampshire Sub-Class Members suffered economic damage, including loss attributable to the diminished value of their Class Vehicles, loss of use of their Class Vehicles and other tangible property, as well as the monies spent and to be spent to repair and/or replace their batteries.

**ELEVENTH CAUSE OF ACTION**
MISSOURI MERCHANDISING PRACTICES ACT
(MO. REV. STAT. §§ 407.010, *et seq.*)
(Plaintiff Huchteman individually, and on behalf of the Missouri
Sub-Class against all Defendants)

170.  Plaintiffs incorporate by reference and re-allege the preceding paragraphs as if fully set forth herein.

171.  Kris Huchteman ("Missouri Plaintiff") brings this cause of action on behalf of himself and on behalf of the Missouri Sub-Class against all Defendants.

172.  Toyota, Missouri Plaintiff and Missouri Subclass Members are "persons" within the meaning of Mo. Rev. Stat. § 407.010(5).

173.  Toyota engaged in "trade" or "commerce" in the State of Missouri within the meaning of Mo. Rev. Stat. § 407.010(7).

174.  The Class Vehicles are "merchandise" within the meaning of Mo. Rev. Stat. § 407.010(4).

175.  The Missouri Merchandising Practices Act ("MMPA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, misrepresentation, unfair practice, or the concealment, suppression, or omission of

any material fact in connection with the sale or advertisement of any merchandise."
Mo. Rev. Stat. § 407.020.

176.   Toyota engaged in deceptive trade practices in violation of the MMPA by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the defective batteries installed in them. Toyota's deceptive business practices include: (i) representing that its vehicles had characteristics, uses, or benefits which they do not have; (ii) advertising its goods with intent not to sell them as advertised; (iii) representing that its vehicles are of a particular standard, quality, or grade when they are not; (iv) representing that a transaction conferred or involved rights, remedies, or obligations which they do not; and (v) representing that its goods have been supplied in accordance with a previous representation when they have not.

177.   Toyota owed Missouri Plaintiff and Missouri Sub-Class Members a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective batteries installed in them because Toyota: (a) possessed exclusive knowledge of the dangers and risks posed by the foregoing; (b) intentionally concealed the foregoing from Plaintiff; and/or (c) made incomplete representations about the safety and reliability of the foregoing generally, while withholding material facts from Missouri Plaintiff and Missouri Sub-Class Members that contradicted these representations.

178.   Toyota's failure to disclose and active concealment of the dangers and risks posed by the defective batteries in Class Vehicles were material to Missouri Plaintiff and Missouri Sub-Class Members. A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

179. Missouri Plaintiff and Missouri Sub-Class Members suffered ascertainable loss caused by Toyota's misrepresentations and failure to disclose

material information. Had they been aware of the defective batteries installed in the Class Vehicles, Missouri Plaintiff and Missouri Sub-Class Members either would have paid less for their vehicles or would not have purchased or leased them at all. Missouri Plaintiff and Missouri Sub-Class Members did not receive the benefit of their bargain as a result of Toyota's misconduct.

180.   Toyota knew or should have known that its conduct violated the MMPA.

181.   Toyota's violations present a continuing risk to Missouri Plaintiff, the Missouri Sub-Class, as well as to the general public. Toyota's unlawful acts and practices complained of herein affect the public interest.

182.   As a direct and proximate result of Toyota's violations of the MMPA, Missouri Plaintiff and Missouri Sub-Class Members have suffered injury-in-fact and/or actual damages.

183.   Toyota is liable to Missouri Plaintiff and the Missouri Sub-Class Members for damages in amounts to be proven at trial, including attorneys' fees, costs, and punitive damages, as well as injunctive relief enjoining Toyota's unfair and deceptive practices, and any other just and proper relief under Mo. Rev. Stat. § 407.025.

**TWELFTH CAUSE OF ACTION**
BREACH OF EXPRESS WARRANTY
(MO. REV. STAT. §§ 400.2-313010)
(Plaintiff Huchteman individually, and on behalf of the Missouri
Sub-Class against TMS)

184.   Plaintiffs incorporate by reference and re-allege the preceding paragraphs as if fully set forth herein.

185.   Missouri Plaintiff brings this cause of action individually and on behalf of the Missouri Subclass against TMS.

186.   Missouri Plaintiff and Missouri Sub-Class Members are and were at all relevant times buyers under Mo. Rev. Stat. § 400.2-313, a bought the Class Vehicles for personal, family, and/or household purposes.

187.   Toyota is and was at all relevant times a seller of the Class Vehicles under Mo. Rev. Stat. § 400.2-313.

188.   The Class Vehicles at issue constitute goods under Mo. Rev. Stat. § 400.2-313.

189.   Missouri Plaintiff and Class Members bought or leased Toyota RAV4 vehicles equipped with defective 12V Batteries.

190.   TMS made express warranties to Missouri Plaintiff and Missouri Sub-Class Members within the meaning of the warranty statutes.

191.   In the course of selling and leasing the Class Vehicles, TMS expressly warranted in writing that the vehicles were covered by certain warranties in TMS's "New Vehicle Limited Warranty" as described herein. This express warranty states that "[t]his warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota."

192.   The Battery Defect is covered by the New Vehicle Limited Warranty.

193.   The New Vehicle Limited Warranty as described was made part of the basis of the bargain when Plaintiff and Class Members bought or leased the Class Vehicles.

194.   TMS breached its express warranties to repair defects in materials and workmanship of any part supplied by TMS. TMS has not repaired, and has been unwilling to reasonably repair, the Battery Defect.

195.   Furthermore, the express warranties to repair defective parts fail in their essential purpose because the contractual remedy is insufficient to make Missouri Plaintiff and Missouri Sub-Class Members whole and because TMS has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

196.   Accordingly, recovery by Missouri Plaintiff and Missouri Sub-Class Members is not limited to the express warranties of repair to parts defective in materials or workmanship, and Plaintiff seeks all remedies as allowed by law.

197.   TMS was provided notice of these issues by numerous customer complaints regarding the Battery Defect before or within a reasonable amount of time after the allegations of the Defect became public.

198.   In addition, Missouri Plaintiff herself gave notice of the Battery Defect in his vehicle via a letter to TMS on June 18, 2021.

199.   However, Missouri Plaintiff was not required to notify TMS of its breach because giving TMS a reasonable opportunity to cure any breach of written warranty would have been futile. TMS was also on notice of the defect from the complaints and service requests it received from Class Members, from repairs and/or replacements of the Batteries or a component thereof, through the NHTSA investigation opened on February 25, 2021, and through other internal sources.

200.   Missouri Plaintiff and other Missouri Sub-Class members are entitled to statutory damages and other legal and equitable relief including, at their election, the purchase price of or a buyback of their TMS vehicles, or the overpayment or diminution in value of their Class Vehicles.

201.   Missouri Plaintiff and Missouri Sub-Class Members are also entitled to costs and reasonable attorneys' fees.

## THIRTEENTH CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
(Mo. Rev. Stat. § 400.2-314(2)(c))
(Plaintiff Huchteman individually, and on behalf of the
Missouri Sub-Class against all Defendants)

202.   Plaintiffs incorporate by reference and re-alleges the preceding paragraphs as if fully set forth herein.

203.   Missouri Plaintiff brings this cause of action individually and on behalf of the Missouri Sub-Class against all Defendants.

204.   Toyota is and was at all relevant times a "merchant" with respect to motor vehicles under Mo. Rev. Stat. § 400.2-314(1).

205. The Class Vehicles are and were at all relevant times "goods" within the meaning of Mo. Rev. Stat. § 400.2-314(1).

206. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law under Mo. Rev. Stat. § 400.2-314(2)(c).

207. Toyota was and is in actual or constructive privity with Plaintiff and Class Members.

208. At all relevant times hereto, applicable law imposed upon Toyota a duty that the batteries installed in the Class Vehicles be fit for the ordinary purposes for which batteries are used and that they pass without objection in the trade under the contract description.

209. Toyota has not validly disclaimed, excluded, or modified the implied warranties or duties described above, and any attempted disclaimer or exclusion of the implied warranties was an is ineffectual.

210. The Batteries installed in the Class Vehicles were defective at the time they left the possession of Toyota, as set forth above. Toyota knew of this Defect at the time the purchase and lease transactions occurred. Thus, the Batteries installed in the Class Vehicles, when sold and at all times thereafter, were not in merchantable condition or quality because they are not fit for their ordinary intended purpose and they do not pass without objection in the trade under the contract description.

211. Missouri Plaintiff and Missouri Sub-Class Members used the batteries installed in the Class Vehicles in a manner consistent with their intended use and performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Toyota or by operation of law in light of Toyota's unconscionable conduct.

212. Toyota had actual knowledge of, and received timely notice regarding, the Defect at issue in this litigation and, notwithstanding such notice, failed and refused to offer an effective remedy.

213.   In addition, Toyota received, on information and belief, numerous consumer complaints and other notices from customers advising of the Defect associated with the batteries installed in the Class Vehicles.

214.   By virtue of the conduct described herein and throughout this Complaint, Toyota breached the implied warranty of merchantability.

215.   As a direct and proximate result of Toyota's breach of warranties, Missouri Plaintiff and Missouri Sub-Class Members suffered economic damage, including loss attributable to the diminished value of their Class Vehicles, loss of use of their Class Vehicles and other tangible property, as well as the monies spent and to be spent to repair and/or replace their batteries.

**FOURTEENTH CAUSE OF ACTION**
FRAUDULENT CONCEALMENT
(Plaintiffs individually, and on behalf of the Class against all Defendants)

216.   Plaintiffs incorporate by reference and re-allege the preceding paragraphs as if fully set forth herein.

217.   Plaintiffs bring this cause of action on behalf of themselves and on behalf of the Class against all Defendants.

218.   Toyota concealed and suppressed material facts concerning the performance and quality of the Class Vehicles—namely, the Battery Defect—and the quality of the Toyota brand. Specifically, Toyota knew (or should have known of) the Battery Defect but failed to disclose it prior to or at the time it sold or leased Class Vehicles to consumers. Toyota did so to boost sales and leases of Class Vehicles.

219.   Plaintiffs and Class Members had no way of knowing that Toyota's representations were false and gravely misleading, or that Toyota had omitted imperative details. Plaintiffs and Class Members did not, and could not, unravel Toyota's deception on their own.

220.   Toyota had a duty to disclose the true performance of Class Vehicles and the Battery Defect because knowledge thereof and the details related thereto were known and/or accessible only to Toyota; Toyota had superior knowledge and access to the facts; and knew the facts were not known to, or reasonably discoverable, by Plaintiffs and the Class. Toyota also had a duty to disclose because they made many general affirmative representations about the qualities of the Class Vehicles.

221.   On information and belief, Toyota still has not made full and adequate disclosures, and continues to defraud consumers by concealing material information regarding the Defect and the performance and quality of Class Vehicles.

222.   Plaintiffs and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or leased the Class Vehicles. The actions of Plaintiffs and Class Members were justified. Toyota was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or Class Members.

223.   Plaintiffs and the Class relied upon Toyota's representations and omissions regarding the quality of Class Vehicles and the Defect in deciding to purchase or lease Class Vehicles.

224.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Class sustained damage because they did not receive the value of the price paid for their Class Vehicles. Plaintiffs and Class Members would have paid less for Class Vehicles had they known about the Battery Defect, or they would not have purchased or leased Class Vehicles at all.

225.   Accordingly, Toyota is liable to Plaintiffs and Class Members for damages in an amount to be proven at trial.

226.   Toyota's actions and omissions were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the

Class' rights and well-being, to enrich Toyota. Toyota's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

227.   Furthermore, as the intended and expected result of its fraud and conscious wrongdoing, Toyota has profited and benefited from Plaintiffs' and Class Members' purchase of Class Vehicles containing the Battery Defect. Toyota has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of Toyota's misconduct alleged herein, Plaintiffs and Class Members were not receiving trucks of the quality, nature, fitness, or value that had been represented by Toyota, and that a reasonable consumer would expect.

228.   Toyota has been unjustly enriched by its fraudulent, deceptive, and otherwise unlawful conduct in connection with the sale and lease of Class Vehicles and by withholding benefits from Plaintiffs and Class Members at the expense of these parties. Equity and good conscience militate against permitting Toyota to retain these profits and benefits, and Toyota should be required to make restitution of its ill-gotten gains resulting from the conduct alleged herein.

**FIFTEENTH CAUSE OF ACTION**
UNJUST ENRICHMENT
(Plaintiffs individually, and on behalf of the Class against all Defendants)
(IN THE ALTERNATIVE)

229.   Plaintiffs incorporate by reference and re-allege the preceding paragraphs as if fully set forth herein.

230.   Plaintiffs bring this cause of action on behalf of themselves and on behalf of the Class against all Defendants.

231.   Toyota has long known that its 12V Batteries have a propensity to short, causing loss of power, vehicle stalling, smoke and fire, posing a serious safety risk, which it concealed and failed to disclose to Plaintiffs and Class Members.

232.   As a result of its fraudulent acts and omissions related to the defective Batteries, Toyota obtained monies which rightfully belong to Plaintiffs and the Class Members to the detriment of Plaintiffs and Class Members.

233.   Toyota appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiffs and the proposed Class Members who, without knowledge of the Battery Defect, paid a higher price for their vehicles which actually had lower values.   Toyota also received monies for vehicles that Plaintiffs and the Class Members would not have otherwise purchased or leased.

234.   It would be inequitable and unjust for Toyota to retain these wrongfully obtained profits.

235.   Toyota's retention of these wrongfully obtained profits would violate the fundamental principles of justice, equity, and good conscience.

236.   As a result of Defendants' unjust enrichment, Plaintiffs and Class Members have suffered damages.

237.   Plaintiffs do not seek restitution under their Unjust Enrichment claim. Rather, Plaintiffs and Class Members seek non-restitutionary disgorgement of the financial profits that Defendants obtained as a result of its unjust conduct.

238.   Additionally, Plaintiffs seek injunctive relief to compel Defendants to offer, under warranty, remediation solutions that Defendants identify. Plaintiffs also seek injunctive relief enjoining Defendants from further deceptive distribution, sales, and lease practices with respect to Class Vehicles, enjoining Defendants from selling the Class Vehicles with the misleading information; compelling Defendants to provide Class members with a replacement components that do not contain the defects alleged herein; and/or compelling Defendants to reform its warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranty has been reformed. Money damages are not an adequate remedy for the above requested non-monetary injunctive relief.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Class and Sub-Classes proposed in this Complaint, respectfully requests that the Court enter judgment in their favor and against Toyota, as follows:

A.   Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiffs as Class and Sub-Class Representative and appointing the undersigned counsel as Class Counsel;

B.   A declaration that Defendants are financially responsible for notifying all Class Members about the defective nature of the of the battery, including the need for repairs;

C.   An order enjoining Defendants from further deceptive distribution, sales, and lease practices with respect to Class Vehicles; compelling Defendants to issue a voluntary recall for the Class Vehicles pursuant to 49 U.S.C. § 30118(a); compelling Defendants to remove, repair, and/or replace the Class Vehicles' defective batteries with suitable alternative product(s) that do not contain the defects alleged herein; enjoining Defendants from selling the Class Vehicles with the misleading information; and/or compelling TMS to reform its warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranty has been reformed;

D.   Ordering Toyota to pay actual damages (and no less than the statutory minimum damages) and equitable monetary relief to Plaintiffs and the other members of the Class and Sub-Classes;

E.   Ordering Toyota to pay punitive damages, as allowable by law, to Plaintiffs and the other members of the Class and Sub-Classes;

F.  Ordering Toyota to pay statutory damages, as allowable by the statutes asserted herein, to Plaintiffs and the other members of the Class and Sub-Classes;

G.  Any and all remedies provided pursuant to the state and federal consumer protection statutes herein alleged, including any applicable statutory and civil penalties;

H.  Any and all remedies provided pursuant to the state warranty statutes herein alleged, including any applicable statutory and civil penalties;

I.  A declaration that Defendants must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale or lease of its Class Vehicles or make full restitution to Plaintiffs and Class Members;

J.  Ordering Toyota to pay attorneys' fees and litigation costs incurred by Plaintiffs for the benefit of the Class and Sub-Classes;

K.  Ordering Toyota to pay both pre- and post-judgement interest on any amounts awarded; and

L.  Ordering such other and further relief as may be just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of themselves and all others similarly situated, hereby demand a trial by jury as to all matters so triable.

1    Dated: June 24, 2021                    Respectfully submitted,

2

3                                            /s/ *Tarek H. Zohdy*

4                                            Tarek H. Zohdy (SBN 247775)
                                             Cody R. Padgett (SBN 275553)
5                                            **CAPSTONE LAW APC**

6                                            1875 Century Park East, Suite 1000
                                             Los Angeles, California 90067
7                                            Telephone:  (310) 556-4811

8                                            Facsimile:   (310) 943-0396
                                             Tarek.Zohdy@capstonelawyers.com
9                                            Cody.Padgett@capstonelawyers.com

10
                                             Russell D. Paul (*pro hac vice* forthcoming)
11                                           Abigail Gertner (*pro hac vice* forthcoming)

12                                           Amey J. Park (*pro hac vice* forthcoming)
                                             **BERGER MONTAGUE PC**
13                                           1818 Market Street, Suite 3600

14                                           Philadelphia, PA 19103
                                             Tel.:  (215) 875-3000
15                                           Fax:   (215) 875-4604

16                                           Email: rpaul@bm.net
                                                    agertner@bm.net
17                                                  apark@bm.net

18
                                             Greg Coleman (*pro hac vice* forthcoming)
19                                           Ryan P. McMillan (*pro hac vice* forthcoming)

20                                           Milberg Coleman Bryson Phillips Grossman
                                             LLP
21                                           800 S. Gay Street, Suite 1100

22                                           Knoxville, TN 37929
                                             Tel: 865-232-1315
23                                           gcoleman@milberg.com

24                                           rmcmillan@milberg.com

25

26

27

28